**In re Lloyd Delaus PAINE;  Lorna Joyce Paine, Debtors.**

**Lloyd Delaus Paine;  Lorna Joyce Paine, Appellants,**

v.

**Howard C. Dickey;  Henry Mortensen; Emil F. Jarosic;  Lumn Family Trust; Leon Finnerty;  Evelyn Finnerty;  the Howard C. Kuhle 1980 Trust;  Weldon Griffin;  Gerald Davis, Trustee, Appellees.**

**BAP No. SC–99–1524.
Bankruptcy No. 95–03045–PB7.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Feb. 25, 2000.

Decided June 1, 2000.

John L. Smaha, San Diego, CA, for Lloyd and Lorna Paine.

Martin A. Elipulos, Higgs, Fletcher & Mack, San Diego, CA, for the Howard C. Kuhle 1980 Trust.

Ronald F. Woods, Woods & Associates, San Diego, CA, for Weldon Griffin.

Before: MARLAR, RUSSELL, and RYAN, Bankruptcy Judges.

### OPINION

MARLAR, Bankruptcy Judge.

The debtors appeal the bankruptcy court's order reopening their closed, no-asset chapter 7[1] case upon the motion of secured creditors. The creditors sought declaratory relief concerning the effect of the discharge injunction on their deficiency judgment, and alleged that there were previously undisclosed, non-exempt assets that were property of the estate. In its order, the bankruptcy court required the debtors to amend their schedules to add any omitted creditors or assets, and set a 30–day deadline for the creditors in which to file a complaint for nondischargeability.

The creditors seek to distinguish this case from *In re Beezley*, 994 F.2d 1433 (9th Cir.1993), which held that it is not necessary for a no-asset case to be reopened for the limited purpose of amending schedules to list an omitted creditor. However, we find that the debtors lack standing to appeal this order.

### FACTS

In 1990 and 1991, Lloyd DeLaus Paine and Lorna Joyce Paine, (the "debtors"), executed two promissory notes for the sum of $1,020,000, which were secured by undeveloped real property located in Jamul, California ("Jamul Property"). The notes were executed in favor of Howard C. Dickey, Ruth P. Dickey, Henry Mortensen, Emil F. Jarosic, Lumn Family Trust, Leon S. Finnerty and Evelyn H. Finnerty (the "Finnerty Group"), Marjorie M. Brazil, and the predecessor in interest to, and the Howard C. Kuhle 1980 Trust (collectively the "creditors").[2] By 1992, the debtors

---

1. Unless otherwise indicated, references to "chapter," "section/§," or "Code" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330. References to "Fed.R.Bankr.P." are to the Federal Rules of Bankruptcy Procedure.

2. Appellee Weldon Griffin has joined in the Opening Brief of The Howard C. Kuhle 1980 Trust, claiming to be an interested party. Mr. Griffin was the real estate agent who handled

had defaulted on the payments of both notes.

On March 28, 1995, the debtors filed a chapter 7 petition. At the time of the filing, they owed the creditors approximately $2 million on the notes, as well as several thousands of dollars in property taxes. The debtors listed neither the Jamul Property nor their obligations to the creditors in their schedules and statements. The debtors also allegedly failed to list as an asset a carved wooden eagle, which the creditors alleged was worth about $700,000 at the time of filing.

No deadline was set for filing proofs of claim in the case, as there appeared to be no assets. The deadline for nondischargeability complaints was July 3, 1995. The creditors, who, undisputedly, did not receive notice, nor did they have actual notice of the bankruptcy filing until 1998, did not file any complaints before the deadline passed. The debtors' discharge was entered in July 1995. In August 1995, the bankruptcy court approved the trustee's "no-asset" report, and closed the case.

In February 1997, the creditors filed a complaint in state court for judicial foreclosure of the first deed of trust on the Jamul Property. The debtors filed a declaration in that action stating that they intended to file a chapter 13 bankruptcy. They did not mention the prior chapter 7 case, nor did they plead the defense of discharge. The state court summary judgment proceedings and trial were continued pending the anticipated filing of the chapter 13 case.

The debtors filed a voluntary chapter 13 petition on March 2, 1998. It was at that time that the creditors first became aware of the prior chapter 7 case. The debtors' chapter 13 schedules and statements listed the Jamul Property with a value of $1.3 million, and liens totaling $845,000. The wooden eagle was not listed as an asset, but, apparently, had been previously transferred to a family trust. The creditors immediately moved to dismiss the chapter 13 case, but, instead, the debtors voluntarily dismissed their case. The bankruptcy court granted the creditors' request that the case be dismissed with a 180–day bar to refiling, and the dismissal order was entered on May 11, 1998.

On June 19, 1998, the state court granted summary judgment in favor of the creditors, awarding them approximately $1.5 million, as well as ordering the foreclosure and sale of the Jamul Property. It further ordered that the debtors were personally liable for any deficiency judgment, and that the state court would retain jurisdiction to determine the amount of such deficiency.

At the sale held on September 1, 1998, the creditors obtained the property by credit bid in the amount of $845,000. The creditors applied for a deficiency judgment, but three days before the scheduled hearing on January 8, 1999, the debtors filed a Notice of Automatic Stay and Statutory Injunction in the state court, asserting for the first time that the unsecured deficiency debt had been discharged in the prior chapter 7 case. On January 21, 1999, the state court entered an order granting the deficiency judgment in the amount of $779,886.99. The state court declined, however, to rule on the legal effect of the discharge, leaving that matter to the bankruptcy court.

The following June 1999, the creditors filed in bankruptcy court a motion to reopen the debtors' closed chapter 7 case, for the purpose of obtaining an order granting them relief from the discharge injunction "or any other appropriate relief" in order to enforce and collect their deficiency judgment, and for "any additional relief which is just and proper." The creditors alleged that cause existed to reopen the case because the debtors "fraudulently procured

the loan transactions for the creditors, and he also extended monies to the debtors. Mr.

Griffin stated that he holds a state court judgment against Mr. Paine.

their discharge by failing to disclose substantial non-exempt assets which should have been made available to the chapter 7 trustee for liquidation to pay claims including the claims of Movants."

The creditors presented Mr. Paine's deposition testimony that the Jamul Property, which had not been scheduled in the chapter 7 case, had been appraised at $1.8 million in 1990, and that Mr. Paine had offers to purchase the property ranging from $1.3 to $1.7 million between 1990 and 1993. Mr. Paine also testified in the deposition that in October 1997 he owned a life-sized, hand-carved wooden eagle, which he acquired before the chapter 7 petition was filed. The creditors also presented declaration evidence which established the value of the eagle as $700,000 at the time of the bankruptcy filing. There was also evidence presented that the debtors owned other wooden sculptures which allegedly were transferred to a family trust.

The debtors filed an objection to the motion to reopen, and attached Mr. Paine's declaration in which he attempted to explain that the assets were not property of the estate available for distribution to the creditors, or that they were worthless. The debtors objected to reopening the case because: (1) the time for seeking a revocation of the discharge had long since passed; (2) the creditors' debt was an alleged contract debt which had been discharged in the chapter 7 case; and (3) the creditors had not filed a § 523 complaint. The debtors argued that reopening the case would be a meaningless gesture, citing *Beezley*.

A hearing took place on July 19, 1999. The United States Trustee, who had not filed a pleading, appeared and argued in favor of reopening, based on concerns about the debtors' conduct and alleged failure to disclose assets.

3. The proposed form of order limited the potential complaints to those under § 523(a)(2), (4) or (6). However, the bankruptcy judge

The bankruptcy court ruled that *Beezley* was inapplicable to these facts. The court reopened the case in order to (1) appoint a standing trustee to investigate whether there were assets which needed to be administered; (2) allow the debtors to amend their schedules and statements to add undisclosed assets and creditors; and (3) give the creditors 30 days to file any § 523 nondischargeability action.[3]

The Order granting the motion to reopen the chapter 7 case was entered on August 5, 1999, and the debtors timely appealed. Subsequently, the debtors amended their schedules, and the creditors filed an amended complaint pursuant to § 523(a)(2) and for violation of due process.

## *ISSUES*

This appeal raises several issues, including the following:

1. Whether the panel has jurisdiction over this appeal.

2. Whether the bankruptcy court abused its discretion or exceeded the scope of its authority by giving the moving creditors the opportunity to file "any" § 523 complaint.

3. Whether the bankruptcy court had cause to reopen the closed chapter 7 bankruptcy case for the purpose of investigating the availability of undisclosed assets.

4. Whether the rule of *Beezley* would prohibit the court from reopening this case and ordering the debtors to amend their bankruptcy schedules.

■ After a full review of the briefs, the argument, and the record, the panel finds that the debtors have not met the threshold requirement to establish their standing to appeal the bankruptcy court's order. Therefore, the only issue ultimately addressed is that of standing.[4]

crossed out these subsections in the final order, leaving just "§ 523(a)."

4. The order on appeal is unquestionably interlocutory. *In re Wilborn*, 205 B.R. 202, 206

## STANDARD OF REVIEW

■■■■ Standing is a jurisdictional prerequisite that the panel reviews *de novo*. *Warth v. Seldin*, 422 U.S. 490, 497, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); *In re Parmetex, Inc.*, 199 F.3d 1029, 1030 (9th Cir.1999); *In re Than*, 215 B.R. 430, 434 (9th Cir. BAP 1997). Whether an appellant is a "person aggrieved" for purposes of appealing an order of the bankruptcy court is a factual finding. *In re P.R.T.C., Inc.*, 177 F.3d 774, 777 (9th Cir.1999).

## DISCUSSION

### A. Standing

■■■■ The panel may raise jurisdictional issues *sua sponte*. *See In re Landmark Hotel & Casino, Inc.*, 78 B.R. 575, 582 (9th Cir. BAP 1987). "Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation." *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255, 114 S.Ct. 798, 802, 127 L.Ed.2d 99 (1994).

■■■■ Only persons who are directly and adversely affected pecuniarily by an order have standing to appeal the order. *In re Fondiller*, 707 F.2d 441, 442–43 (9th Cir.1983). A person is "directly and adversely affected pecuniarily" if the order would "diminish the debtor's property, increase his burdens, or detrimentally affect his rights." *Id.* at 442.

Section 350(b) provides authority for the bankruptcy court to reopen a closed case "to administer assets, to accord relief to the debtor, or for other cause." Bankruptcy Rule 5010 provides that a "case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code."

(9th Cir. BAP 1996) (citing cases). We need not make a decision whether to exercise our discretion to grant leave to appeal, in that the appeal is dismissed due to lack of standing.

**5.** The motion to reopen sought broad relief under the Code. The creditors also indicated

The bankruptcy court order was in response to a request by the creditors to determine if the discharge injunction prevented them from enforcing their deficiency judgment, which they alleged had not been discharged.[5] In addition, the creditors' motion sought to reopen the case in order to administer assets that had previously been undisclosed.

The bankruptcy court reopened the case and it (1) set a date certain for the creditors to file a nondischargeability complaint in order to determine whether the deficiency judgment was discharged in the debtors' chapter 7 case; (2) ordered that a trustee be appointed to investigate any undisclosed assets; and (3) directed the debtors to amend the chapter 7 schedules to include omitted assets and creditors. The debtors' standing to appeal the order turns on whether their interests are affected by these directives.

### B. Reopening to Allow Filing of Nondischargeability Complaint

The first part of the order was in response to the creditors' request for declaratory relief concerning the effect of the discharge injunction on their debt. The bankruptcy court did not rule on the substance of that request, but instead gave the creditors 30 days to file a § 523 complaint.

Following the entry of the order in this appeal, we issued an opinion which held that a debtor lacks standing to appeal an order reopening a bankruptcy case for the purpose of entertaining a creditor's nondischargeability action. *In re Menk*, 241 B.R. 896, 917 (9th Cir. BAP 1999).

In *Menk*, the debtor appealed an order granting a creditor's motion to reopen for

in their pleadings that they intended to file an adversary proceeding under § 523(a)(3) if the court reopened the case. They repeated this alternative request at the hearing on July 19, 1999.

the purpose of bringing an action to determine nondischargeability, but the appeal was dismissed as interlocutory. Following completion of the litigation and a determination of nondischargeability, the debtor again appealed the underlying order to reopen but did not appeal the nondischargeability judgment. Thus, the debtor was "indirectly attacking the jurisdictional underpinnings of the judgment." *Id.* at 903.

*Menk* was decided on alternate bases of mootness and lack of standing to appeal. Because the debtor had not appealed the judgment of nondischargeability, the panel could not fashion any effective relief.

Additionally, the panel, noting that the debtor's interest in the reopening order was merely that of a prospective defendant in an adversary proceeding, held that such a person is not a person aggrieved because "every cognizable defense in the underlying dispute will be available in the ensuing adversary proceeding." *Id.* at 917.

Such law is well-established, particularly as to third party defendants. *See Fondiller*, 707 F.2d at 443 (debtor's wife, who was a potential defendant in a fraudulent transfer action, lacked standing to appeal the order reopening the case to allow the trustee to bring the action); *In re Abbott*, 183 B.R. 198, 200 (9th Cir. BAP 1995) (same situation, *i.e.*, wife of debtor and fraudulent transfer complaint); *In re Snyder*, 4 F.2d 627, 628 (9th Cir.), *cert. denied sub nom. McColgan v. Clark*, 269 U.S. 556, 46 S.Ct. 19, 70 L.Ed. 409 (1925) (third party transferee of estate property appealed reopening to administer assets).

The same reasoning was also applied to a party in interest—a former trustee—who was a potential defendant in a creditor's suit. The First Circuit held that the trustee could not appeal an order granting the creditor leave to sue. Notwithstanding that the former trustee did have an interest in defending himself against liability, the First Circuit held that the order did not "prevent [him] from doing just that, or from asserting any claim or defense he may have." *In re El San Juan Hotel*, 809 F.2d 151, 155 (1st Cir.1987).

▇ Initially, the instant appeal appears to be distinguishable from *Menk* because here the debtors themselves are the potential defendants. The debtor in *Menk* had already defended the adversary action, and merely sought to undo that judgment by appealing the underlying order reopening the case. The debtor in *Menk* lacked standing because a reversal would not affect the judgment of nondischargeability that he did not appeal. *See Menk*, 241 B.R. at 918 (concurring op.).

The practical effect of the instant motion, however, was to reopen the case to allow the creditors to file the requisite adversary proceeding.[6] By analogy to the foregoing case law, such an order, allowing the creditors to file an adversary proceeding, only potentially affected the debtors' rights. The debtors have yet to litigate the dischargeability of their debt to the creditors. The omitted creditors do not presently have a claim against the no-asset estate. And, like the trustee in *El San Juan Hotel*, the debtors' personal liability for the debt is not affected by the reopening, which is simply a mechanical device, with no independent significance. *Menk*, 241 B.R. at 913; *Abbott*, 183 B.R. at 200.

Therefore, we hold that the debtors do not have standing to appeal that portion of the order which simply granted the creditors leave to file a nondischargeability proceeding because that order did not adversely affect the debtors pecuniarily. The debtors' interests in the order are merely those of potential defendants in an as yet unfiled adversary proceeding, and they will be able to raise all defenses to the complaint during any such litigation. The debtors, therefore, do not have stand-

---

**6.** A motion to reopen is a jurisdictionally unnecessary preliminary step in order to initiate an adversary proceeding to determine the nondischargeability of a debt, although it might be administratively expedient. *See Menk*, 241 B.R. at 910.

ing to question whether the bankruptcy court abused its discretion by giving the moving creditors the opportunity to file "any" § 523 complaint.

### C. Reopening to Administer Undisclosed Assets

The debtors contend that the bankruptcy court abused its discretion by reopening the case to appoint a trustee to investigate the availability of assets for distribution because the evidence was insufficient that there were valuable assets.

██ Generally, debtors do not have standing to oppose the reopening of their bankruptcy case for the purpose of administering assets that have been discovered but have not been fully administered. *See Williams v. Rice,* 30 F.2d 814, 815 (5th Cir.1929); *In re Chapman,* 55 F.2d 965, 966 (N.D.N.Y.1930); *In re Ayoub,* 72 B.R. 808, 812 (Bankr.M.D.Fla.1987).

██ Here, the preliminary evidentiary offering identified the specific assets, and indicated that the Jamul Property and the carved wooden eagle were likely property of the estate. The administration of any already discovered, non-exempt property of the estate would not diminish the debtors' personal interest in the property, increase their burdens, or detrimentally affect their rights. *Fondiller,* 707 F.2d at 442.

It follows that debtors lack standing to object when a creditor moves for such relief. Often, a motion of this type is made by a creditor *ex parte,* and can also be accomplished *sua sponte* by the court upon information it obtains from sources such as creditors. *Snyder,* 4 F.2d at 628; *Schofield v. Moriyama,* 24 F.2d 473, 474 (9th Cir.1928); *Menk,* 241 B.R. at 915 (a motion to reopen can be considered *ex parte* and without notice).

Therefore, the debtors lack standing to raise an issue as to whether the bankruptcy court had cause to reopen the closed chapter 7 bankruptcy case for the purpose of investigating the availability of undisclosed assets.

### D. Reopening to Add Omitted Creditors and Assets to Schedules

Although the creditors and not the debtors moved to reopen the closed case, a logical consequence thereof was the bankruptcy court's order giving the debtors 20 days to amend their chapter 7 schedules to add any omitted creditors or assets.

██ Rule 1009(a) provides that the bankruptcy court, upon motion by a party in interest, notice and hearing, may order any voluntary statement or schedule to be amended. Fed.R.Bankr.P. 1009(a). Furthermore, § 105(a) authorizes a bankruptcy court to act *sua sponte* to order the debtors to amend the schedules or statements. Fed.R.Bankr.P. 1009(a); NORTON BANKRUPTCY LAW AND PRACTICE 2D, Editors' Comment to Rule 1009, p. 31 (1999–2000 ed.).[7] In this case, the court was authorized to require the debtors to amend their bankruptcy schedules.

On this point, however, the debtors maintain that the exercise of the court's power was prohibited by *Beezley,* contending that *Beezley* held that a closed no-asset case could not be reopened to amend the schedules, even where there is a possibility that more assets will be discovered. We disagree.

*Beezley* is clearly distinguishable from the case before us. The Ninth Circuit merely held that there was no abuse of discretion by the bankruptcy court's denial of the debtor's request to reopen his no-

---

**7.** Section 105(a) provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

asset case to add a creditor because granting the debtor his request would not have accorded relief to the debtor. The entire Per Curiam opinion is as follows:

Debtor Gilbert G. Beezley appeals the decision of the Ninth Circuit BAP, affirming the bankruptcy court's denial of his motion to reopen his bankruptcy case under 11 U.S.C. § 350(b). We have jurisdiction pursuant to 28 U.S.C. § 158(d), and we affirm.

Beezley argues that the bankruptcy court abused its discretion by failing to grant his motion to reopen his case. *See In re Herzig*, 96 B.R. 264, 266 (9th Cir. BAP 1989) (bankruptcy court's refusal to reopen a closed case under 11 U.S.C. § 350(b) reviewed for an abuse of discretion). We disagree. Based on the assumption that amendment was necessary to discharge the debt, Beezley sought to add an omitted debt to his schedules. Beezley's, however, was a no asset, no bar date Chapter 7 case. After such a case has been closed, dischargeability is unaffected by scheduling; amendment of Beezley's schedules would thus have been a pointless exercise. If the omitted debt is of a type covered by 11 U.S.C. 523(a)(3)(A), it has already been discharged pursuant to 11 U.S.C. § 727. If the debt is of a type covered by 11 U.S.C. § 523(a)(3)(B), it has not been discharged, and is nondischargeable. In sum, reopening here in order to grant Beezley's request would not have "accord[ed] relief to" Beezley; thus, there was no abuse of discretion.

*Beezley*, 994 F.2d at 1434 (citations and footnote omitted).

■ Because adding omitted creditors has no effect on the dischargeability of the debts, the debtors were not adversely affected by the instant order. Also, adding assets which could be property of the estate did not detrimentally affect the debtors' interest in that property. Therefore, the panel holds that the debtors also lack standing to appeal that portion of the order that simply directed them to amend their schedules.

## CONCLUSION

■ The debtors have attempted to raise a question of law by appealing the bankruptcy court's order reopening their case. The order reopening, however, was simply a "mechanical device" that did not afford or deny the debtors any affirmative relief. *Menk*, 241 B.R. at 913; *Abbott*, 183 B.R. at 200.

The creditors moved to reopen the case for the dual purpose of determining whether their debt was discharged and to administer assets. The debtors lack standing to appeal the order which granted this relief.

First, the mere amendment to the schedules did not affect the dischargeability of the debt, and the debtors may assert any and all defenses in the context of any forthcoming adversary proceeding. Secondly, the debtors are not adversely affected pecuniarily by having to amend their schedules to add any assets that constitute property of the estate.

Therefore, this appeal is DISMISSED for lack of standing.