**NOT FOR PUBLICATION**

### UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP Nos. CC-15-1310-TaKuD |
| ) | CC-15-1326-TaKuD |
| NTD ARCHITECTS, INC., ) | (related appeals) |
| ) | |
| Debtor. ) | Bk. No. 2:14-bk-16883-BR |
| _____ ) | |
| ) | |
| LITTLE DIVERSIFIED ) | |
| ARCHITECTURAL CONSULTING, ) | |
| INC., ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| NTD ARCHITECTS, INC.; FRED ) | |
| BOLLE; SHARON BOLLE, ) | |
| ) | |
| Appellees.[**] ) | |
| _____ ) | |

Argued and Submitted on March 17, 2016
at Pasadena, California

Filed – April 26, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Barry Russell, Bankruptcy Judge, Presiding

_____

Appearances: Stephen F. Biegenzahn of Friedman Law Group, P.C.
argued for appellant; appellee Sharon Bolle
argued pro se.

_____

[*] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8024-1(c)(2).

[**] NTD Architects, Inc. did not file a brief; pursuant to
the BAP Clerk of Court's conditional order of waiver, it waived
the right to appear in this appeal.

Before: TAYLOR, KURTZ, and DUNN, Bankruptcy Judges.

## INTRODUCTION

Little Diversified Architectural Consulting, Inc. ("Little") appeals from two nearly identical orders approving a stipulation between chapter 11[1] debtor NTD Architects, Inc. and appellees Sharon Bolle and Fred Bolle. The stipulation, as approved by the bankruptcy court's orders, negatively impacts Little's rights, and there is no evidence that Little received notice sufficient to allow it to protect its interests. The record before us also raises other concerns.

We, thus, REVERSE and REMAND to the bankruptcy court for further proceedings consistent with this decision.

## FACTS

The Debtor was an established architectural firm and had numerous accounts and ongoing projects.

### Post-Petition Secured Financing

After filing for bankruptcy, the Debtor obtained $100,000 in debtor-in-possession financing from Sharon Bolle, a longtime employee of the Debtor, and her husband. The Debtor agreed to pledge some of its accounts receivable as collateral for the loan. The bankruptcy court entered an order (the "financing order") approving this secured post-petition financing. There was no appeal from the financing order, and it is now final.

### The § 363(f) Sale to Little

Not long after the Bolles' loan, it became apparent that

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

reorganization was not feasible. The Debtor, thus, commenced liquidation efforts and found a willing buyer for some of its assets, including some client contracts and its accounts receivable, in Little, an east coast architectural firm.

The Debtor and Little entered into a purchase agreement that defined the client contracts subject to the sale as "Assigned Contracts" and expressly identified these contracts in an attached schedule. It also provided that a portion of the purchase price would be paid by Little over a two year period after closing and through quarterly payments based on a percentage of the profits received under the Assigned Contracts and the collections on the acquired accounts receivable.[2]

The purchase agreement contained a representation by the Debtor that all assets sold were free and clear of liens, and the truth of this representation was a condition to closing. Consistent with this representation and condition, the purchase agreement stated that the Debtor would indemnify Little to the extent it suffered any loss resulting from or relating to a failure to transfer the purchased assets to Little free and clear of all liens.

The Debtor sought approval of the purchase agreement and related sale through a motion authorizing a sale free and clear of liens. In support of the motion, the Debtor asserted that the value of its assets was tied directly to the ability to

---

[2] An amended sale order supplemented the payment arrangement; it provided that Little also would pay additional amounts upon collection to satisfy outstanding post-petition claims of the Debtor's consultants and sub-consultants.

3

complete existing client projects and then to collect on those receivables. The Debtor, thus, argued that absent the sale to an architectural firm who could continue (and hopefully complete) the projects, the contracts (and related receivables) were significantly less valuable, if not valueless. This was a key business justification for the sale to Little.

The bankruptcy court entered an order approving the sale of assets to Little on the terms set forth in the purchase agreement. Neither the sale motion nor the sale order expressly referenced the Bolles' lien. And there was no proof of service evidencing that the Debtor served the Bolles with notice of the sale motion. Little, however, asserts on appeal that the Bolles had informal notice and that Sharon Bolle was present at the hearing on the sale. The sale order did not provide for liens to attach to proceeds. There was no appeal from the sale order, and it is now final.

### Stipulation between the Debtor and the Bolles

Six months after the sale to Little, the Debtor moved for approval of a stipulation with the Bolles relating to the unpaid balance of the post-petition loan. There was no proof of service evidencing that the Debtor correctly served Little with the notice or the motion relating to the stipulation. In its proof of service, the Debtor included counsel for Little; as listed, however, counsel's email address is incorrect. The domain name in counsel's email address is "f**l**g-law.com." But the Debtor listed it as "f**i**g-law.com." And the only notice even arguably to Little itself was not directed to an officer or other party with the responsibility for its defense against such claims. Instead,

4

it went to the Debtor's former president, Jay Tittle, who is now employed by Little.  The proof of service reflects electronic service on "Tittle, Jay (former employee of NTD[)]: Jay.Tittle@littleonline.com."  On this record there is no evidence that Tittle was authorized to receive service or notice on Little's behalf.  The Bolles, however, assert on appeal that, at a minimum, Little had informal notice.

The proposed stipulation informed the bankruptcy court that a dispute had arisen as to the exact collateral securing the Bolles' loan.  In resolving this dispute, the Debtor agreed to pay $107,119.50, "from funds turned over or to be turned over by Little [] which are traceable to the accounts or any receivables generated form [sic] the accounts identified in the moving papers."

The Official Committee of Unsecured Creditors filed a notice of position in connection with the motion seeking approval of the proposed stipulation; it asserted that the stipulation was inconsistent with the Bolles' financing agreement and the terms of the sale to Little.  The bankruptcy court disregarded these concerns and approved the stipulation through an order that did not mirror the language in the stipulation.  As relevant, the order authorized payment to the Bolles of $107,119.50 from "proceeds traceable to projects set forth in [an attached list] . . . whether in the possession of [Little] or [Debtor's liquidating agent.]"

Following the bankruptcy court's entry of an amended

5

stipulation order (the "stipulation order"),[3] Little appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C § 158.

**ISSUES**

Whether Little has standing to appeal from the amended stipulation order; if so, whether the bankruptcy court abused its discretion in approving the stipulation between the Debtor and the Bolles.

**STANDARD OF REVIEW**

Standing is an issue that we may raise sua sponte and review do novo. Paine v. Dickey (In re Paine), 250 B.R. 99, 104 (9th Cir. BAP 2000). Whether an appellant is a "person aggrieved" for the purposes of standing is a factual question. Id. (citing Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.), 177 F.3d 774, 777 (9th Cir. 1999)).

We review the bankruptcy court's decision to approve the stipulation for an abuse of discretion. See In re KVN Corp., Inc., 514 B.R. 1, 5 (9th Cir. BAP 2014). The bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are illogical, implausible, or without support in inferences that

---

[3] The orders on appeal are virtually identical except that the amended stipulation order clarifies that the Bolles have a "security interest," rather than a "superpriority lien," with respect to the identified assets. It also supersedes the initial order. Thus, we dispose of both appeals in this appeal but refer only to a single stipulation order in the text.

may be drawn from the facts in the record. See TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

**DISCUSSION**

Little argues that it purchased assets from the Debtor free and clear of all liens and interests, including the Bolles' post-petition lien. It argues that the stipulation order negatively impacts its property interests. The Bolles, in response, contend that Little lacks standing to appeal because it did not object to the proposed stipulation in the bankruptcy court. They also express chagrin at Little's reliance on the effect of the § 363(f) sale; the Bolles contend that Little benefitted tremendously from the sale and that, as a large and well-capitalized company, it is ludicrous to argue that Little would not have purchased the Debtor's assets had it known of the Bolles' lien.

We first address the Bolles' standing argument.

**A.   Little has standing to appeal from the stipulation order.**

To satisfy the prudential standing requirement in bankruptcy cases, an "appellant must be a 'person aggrieved' by the bankruptcy court's order." In re P.R.T.C., Inc., 177 F.3d at 777 (citation omitted). "An appellant is aggrieved if 'directly and adversely affected pecuniarily by an order of the bankruptcy court'; in other words, the order must diminish the appellant's property, increase its burdens, or detrimentally affect its rights." Id. (citation omitted).

It is beyond dispute that the bankruptcy court approved a

7

motion seeking to sell the Debtor's accounts receivables and certain contracts to Little free and clear of any liens or interests; this broad language included the Bolles' post-petition liens pursuant to the financing order. The order approved a sale pursuant to the purchase agreement, which required a sale free and clear. Notwithstanding the Bolles' contention that they did not receive formal notice of the sale,[4] that order is now final and non-appealable. To the extent the stipulation order increased Little's burdens or detrimentally affected its rights to the purchased assets as established by the order approving the purchase agreement, standing to appeal exists. Here, the stipulation order appears to negatively impact Little's rights, and the Bolles certainly argue that this is the case.

**B.    Little did not waive its ability to appeal.**

The Bolles refer to their argument as one involving standing, but their primary argument is actually based on alleged waiver; they focus on Little's failure to oppose approval of the stipulation before the bankruptcy court. There are two reasons why this argument fails.

First, there is no evidence in the record evidencing proper service on Little. Contrary to the Bolles' assertion, there is no evidence that Little's counsel was served with notice of the proposed stipulation via email; the email address in the proof of service was wrong. And as to service involving Tittle, this

---

[4]    We acknowledge that the sale order created an issue because the Bolles were not provided with formal notice of the sale and the sale had the effect of depriving the Bolles of their lien rights created by the financing order.

8

appears to be an attempt at notice only to Tittle, the Debtor's former employee, who happens now to work at Little. There is nothing in the record establishing that this email constituted notice to Little.

But even if service was adequate, the failure to object is not fatal to Little's efforts here. The language of the stipulation itself differs from the relief provided by the stipulation order. The stipulation itself did not have a clear detrimental impact on Little's rights. Similarly, the limited documents filed in support of the motion seeking approval of the stipulation do not provide notice that Little's property rights were involved. The stipulation order, however, contains broader language that has a negative impact. We cannot find that Little waived an objection when the objectionable language emerged only in the stipulation order.

**C.  To the extent the stipulation order reflects the intent of the parties, the bankruptcy court abused its discretion in approving the stipulation; to the extent the stipulation order materially differed from the stipulation, the bankruptcy court also abused its discretion.**

We do not understand how the bankruptcy court approved an order providing the Bolles with a security interest in assets and then approved the sale of some of those assets to Little, free and clear of the Bolles' lien but without proof of any notice to them. But, that is the state of affairs as a result of the final sale order.

The Debtor retained the right to payment from Little and that payment is calculated with reference to collections on the

9

assets sold. Thus, Little has a contractual obligation to make payments to the Debtor. The Bolles, however, have no continuing rights in the assets after sale. The Debtor, of course, could assign its right to these payments, and the stipulation appears to evidence such a non-controversial contract. But, as Sharon Bolle made clear at oral argument, that was not the Bolles' understanding of the stipulation. The Bolles intended to obtain a limitation on Little's right to continuing payment under the Assigned Contracts and acquired accounts receivable when they entered into the stipulation. The stipulation order contains language consistent with the Bolles stated understanding. On this record, there is considerable confusion. We cannot simply affirm and require modification of the stipulation order.

The bankruptcy court appears to have understood that the stipulation detrimentally impacted Little;[5] yet it approved the stipulation notwithstanding a lack of notice to Little. This error was not harmless as it deprived Little of due process in connection with an order that negatively impacted its rights; this constitutes reversible error.

Further, the terms of the stipulation order are inconsistent with the terms of the stipulation. In addition to approving the stipulation, which provided for payment from funds paid or payable by Little, the stipulation order provided for payment from proceeds traceable to assets, including those sold to Little free and clear of the Bolles' lien, and including asset proceeds

---

[5] Indeed, the bankruptcy court commenced the stipulation hearing by observing that the only person subject to potential injury would be Little. Hr'g Tr. (Aug. 12, 2015) at 1:14-19.

10

in Little's possession. To the extent the stipulation order granted relief beyond that provided for in the stipulation itself, reversible error also exists.[6]

**CONCLUSION**

Based on the foregoing, we REVERSE and REMAND to the bankruptcy court for further proceedings consistent with this decision.

---

[6] Finally, we note one additional concern, although it is not a basis for our reversal. The stipulation included reference to charges for "monitoring charges per agreement" and attorney's fees. The inclusion of these charges raises questions. The Debtor's motion to approve the secured post-petition financing expressly provided that the monitoring fees were "an independent obligation from repayment of the loan. . . ." And, the charge for "attorney's fees" is an oddity because, so far as we can tell on this record, the Bolles have never been represented by counsel in the bankruptcy case. The bankruptcy court may wish to address the actual amount owed to the Bolles under the terms of the financing agreement.

11