**In re PETROLEUM PRODUCTION MANAGEMENT, INC., Debtor.**

**GMX Resources, formerly known as Global Millennium Energy, L.L.C., Appellant,**

**v.**

**Mary Ann Kleban; Robert T. Martin; Gilbert Lange Matthews; Larry W. Miller; Steven A. Park; Millicent Zahn; Creditors Trust; Petroleum Production Management, Inc.; and Overland Resources, Inc., Appellees.**

**BAP No. KS–02–004.**
**Bankruptcy No. 97–20144–11.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Aug. 16, 2002.

---

Submitted on the briefs: *

Terry M. Thomas of Crowe & Dunlevy, P.C., Tulsa, OK, and Cynthia F. Grimes of Grimes & Rebein, L.C., Lenexa, KS, for Appellant.

Kenneth C. Jones of Norton, Hubbard, Ruzicka & Kreamer, L.C., Olathe, KS, and Deborah Race and Otis Carroll of Ireland, Carroll & Kelley, P.C., Tyler, TX, for Appellees Mary Ann Kleban, Robert T. Martin, Gilbert Lange Matthews, Larry W. Miller, Steven A. Park, and Millicent Zahn.

Appellees Creditors Trust and Overland Resources, Inc. did not appear or file a brief.

Appellee Petroleum Production Management, Inc. filed a motion to withdraw as party to the appeal and was excused from filing a brief.

Before BOHANON, CORNISH, and CORDOVA, Bankruptcy Judges.

## OPINION

CORDOVA, Bankruptcy Judge.

GMX Resources, LLC ("GMX") appeals from an order of the United States Bankruptcy Court for the District of Kansas denying its motion to reopen the jointly administered Chapter 11 cases of the Debtors, Petroleum Production Management, Inc. and Overland Resources Management, Inc. We conclude that GMX lacks appellate standing and dismiss the appeal.

### I. Background

The Debtors owned and managed gas and oil producing properties in numerous states prior to filing petitions for Chapter 11 relief in the District of Kansas on January 23, 1997. The Debtors continued operating post-petition as debtors-in-possession and eventually entered into an agreement for the sale of substantially all of their assets to GMX. On December 17, 1997, the bankruptcy court approved the sale free and clear of liens pursuant to 11 U.S.C. § 363(f) and Fed. R. Bankr.P. 6004. An amended order approving the sale entered on February 4, 1998. (GMX Appendix at 142–168.)

Under the court's amended sale order and purchase agreement, GMX bought substantially all of the Debtors' assets, consisting of oil and gas properties in five states. One of the properties purchased by GMX was the "Downs Gas Unit No. 1," a 704 acre parcel of natural gas property in Texas ("Downs Well"). (GMX Appendix at 197; GMX Brief at 5.) Paragraph 8 of the amended sale order emphasized that GMX was "*not* purchasing any royalty interest or working interest in the Oil and Gas Properties except those owned by [the Debtors]. CURRENT ROYALTY INTEREST AND WORKING INTEREST OWNERS WILL RETAIN THEIR ROYALTY OR WORKING INTEREST AND [the sale] ORDER SHALL NOT AFFECT THEIR INTEREST[S]." (GMX Appendix at 146.) Similarly, Paragraph J of the amended sale order stated that "[p]ursuant to Section 363(b), the sale of the Oil and Gas Properties includes the interests of the Debtors, including any working interest and/or royalty interest owned by the Debtors, BUT DOES NOT INCLUDE THE INTERESTS OF OTHER WORKING AND ROYALTY INTEREST OWNERS, WHO SHALL RETAIN THEIR OWNERSHIP RIGHTS." (GMX Appendix at 152.)

On the same day that the court entered the amended sale order, it entered a sepa-

---

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

rate amended order approving the assumption and assignment of executory contracts and unexpired leases concerning the oil and gas properties purchased by GMX. (GMX Appendix at 169; see also sale order, *id.* at 149, ¶ 18.) The court's amended assumption order authorized the Debtors to assume certain unexpired leases and executory contracts and assign them to GMX in conjunction with the sale. GMX agreed to assume all of the executory contracts and unexpired leases "subject to the closing of the proposed sale of substantially all of the Debtors' assets to GMX [and subject to] the Debtors' assumption of each and every executory contract and unexpired lease identified on Exhibit 'A' and the assignment of the same to GMX." (GMX Appendix at 176–77.) Exhibit A was attached to the amended assumption order. (GMX Appendix at 183–206.)

Before the Debtors filed for bankruptcy and in the months immediately following the order for relief several of the Debtors' directors and officers resigned. On January 28, 1998, prior to the bankruptcy court's amended orders concerning the sale to GMX, the Debtors' vice-president and sole remaining officer, Larry Miller, also resigned. Although Miller agreed to perform some ministerial and accounting tasks in winding up the Debtors' affairs, he refused to execute documents on the Debtors' behalf to consummate the GMX transaction. The court entered an order on February 17, 1998, designating a representative of the Debtors to close the sale of assets to GMX. (GMX Appendix at 209.) The sale was scheduled to close the next day.[1]

In August 1999, the bankruptcy court confirmed the Debtors' Chapter 11 plan. The plan contained a provision expressly rejecting any executory contracts or unexpired leases that previously had not been assumed by the Debtors. The case was closed on January 9, 2001.

Less than one month after the case was closed, Miller filed suit against GMX in federal district court in Texas, claiming that he owned an interest in the Downs Well. Several other individual plaintiffs joined Miller's suit, asserting similar interests in the Downs Well. (GMX Brief at 5.) The gist of the claims asserted by Miller and the other individuals was that GMX had recognized their ownership interests after purchasing the Downs Well from the Debtors, but GMX allegedly then had concocted a scheme to abandon the Downs Well and return it to production later, excluding Miller and the other individuals from its fruits. (Appellees' Brief at 6–7.)

On October 9, 2001, GMX filed a motion in the Kansas bankruptcy court seeking to reopen the Debtors' jointly administered Chapter 11 cases under 11 U.S.C. § 350(b) and Fed. R. Bankr.P. 5010. GMX sought to reopen the bankruptcy cases to initiate an adversary proceeding in which it would request an injunction precluding Miller and the other plaintiffs in the Texas suit from pursuing their claims and a declaratory judgment that (1) Miller's alleged interest in the Downs Well was void because he had assigned the interest to himself post-petition; (2) the operating contracts upon which Miller and the other plaintiffs sought to recover had been rejected by the Debtors and had not been assumed by GMX; and (3) GMX had purchased the oil

---

**1.** It is noteworthy that the bankruptcy court recognized in its order designating a representative to close the sale that the Debtors had rejected "Operating Agreement number 25." (GMX appendix at 214.) In Exhibit A to the court's amended assumption order, the operating agreements with respect to the Downs Well are labeled with sub-exhibit number 25. (GMX Appendix at 197.)

and gas properties from the Debtor free and clear of the interests allegedly held by Miller and the other plaintiffs. (GMX Brief at 7.)

Miller and the other plaintiffs in the Texas suit filed an objection to GMX's motion to reopen, arguing that GMX did not have standing and that, even if GMX had standing, no cause existed to reopen the bankruptcy cases as required by 11 U.S.C. § 350(b). (GMX Appendix at 510–15.)

The bankruptcy court held a hearing on GMX's motion to reopen on January 10, 2002. The bankruptcy court concluded that GMX had standing to bring the motion to reopen because it held "a pecuniary interest directly affected by [the] bankruptcy cases because it was the purchaser of [sic] the court-approved Section 363 sale." (GMX Appendix at 537.) The court denied the motion to reopen, however, concluding that the issues raised by GMX as a basis for reopening "can and should more appropriately be decided in the Texas federal court." (GMX Appendix at 538.) The bankruptcy court determined that GMX could assert its claims as defenses in the Texas suit. The court recognized that the issues "are not the exclusive province of the bankruptcy court" and they are "broader than the effects of the bankruptcy process." (GMX Appendix at 538.) The court entered judgment in accordance with its oral findings and conclusions on the same day. This appeal followed.

## II. Standard of Review

■ Section 350(b) of the Bankruptcy Code provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Generally, a bankruptcy court's decision on a motion to reopen a closed case under 11 U.S.C. § 350(b) is reviewed for abuse of discretion. *Woods v.*

*Kenan (In re Woods)*, 173 F.3d 770, 778 (10th Cir.), *cert. denied sub nom. Woods v. Kenan*, 528 U.S. 878, 120 S.Ct. 187, 145 L.Ed.2d 157 (1999); *McDonald v. Home State Bank & Trust Co. (In re McDonald)*, 161 B.R. 697, 698 (D.Kan.1993); *see Watson v. Parker (In re Parker)*, 264 B.R. 685, 691–92 (10th Cir. BAP 2001). "While the decision to reopen remains within the broad discretion of the bankruptcy court, it must be tethered to the parameters of § 350(b), or it is an abuse of discretion." *Nintendo Co. v. Patten (In re Alpex Computer Corp.)*, 71 F.3d 353, 356 (10th Cir. 1995) (citation omitted).

## III. Standing

■ Although neither party challenges on appeal the bankruptcy court's conclusion that GMX had standing to move to reopen, this Court has an independent obligation to review GMX's appellate standing as a jurisdictional prerequisite. *National Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 255, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) ("Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation."). An appellate court "has an independent duty to inquire into its jurisdiction over a dispute, even where neither party contests it and the parties are prepared to concede it." *Lopez v. Behles (In re American Ready Mix, Inc.)*, 14 F.3d 1497, 1499 (10th Cir.), *cert. denied*, 513 U.S. 818, 115 S.Ct. 77, 130 L.Ed.2d 31 (1994); *see In re Williams*, 181 B.R. 532, 535 (D.Kan.1995) ("Standing to bring an appeal is a jurisdictional issue which [the] court has a duty to raise and decide on its own."); *see also Paine v. Dickey (In re Paine)*, 250 B.R. 99, 104 (9th Cir. BAP 2000) (noting that bankruptcy appellate panel may raise jurisdictional issues *sua sponte*).

■ The Tenth Circuit Court of Appeals has recognized that, although the Bank-

ruptcy Code "does not contain an explicit grant or limitation on appellate standing," only a "person aggrieved" by a bankruptcy court's order may appeal. *Ready Mix,* 14 F.3d at 1500; *see Weston v. Mann (In re Weston),* 18 F.3d 860, 863 (10th Cir.1994). The "person aggrieved" standard "delimits appellate jurisdiction even more stringently than the doctrine of Article III standing," *Spenlinhauer v. O'Donnell,* 261 F.3d 113, 117 (1st Cir.2001), and is stricter than the prudential requirements associated with standing under Article III. *Alpex,* 71 F.3d at 357 n. 6; *see Harker v. Troutman (In re Troutman Enters., Inc.),* 286 F.3d 359, 364 (6th Cir.2002); *see also EFL Ltd. v. Miramar Res., Inc. (In re Tascosa Petroleum Corp.),* 196 B.R. 856, 863 n. 6 (D.Kan.1996) ("The 'person aggrieved' standard applies to those wanting to *appeal* a bankruptcy court order, and is more exacting than the constitutional 'injury in fact' requirement of standing."); *accord Dworsky v. Canal St. Ltd. P'ship (In re Canal Street Ltd. P'ship),* 269 B.R. 375, 379 (8th Cir. BAP 2001).

■ A "person aggrieved" is one " 'whose rights or interests are directly and adversely affected pecuniarily by the decree or order of the bankruptcy court . . . .' " *Ready Mix,* 14 F.3d at 1500 (quoting *Holmes v. Silver Wings Aviation, Inc.,* 881 F.2d 939, 940 (10th Cir.1989)). " 'Litigants are persons aggrieved' if the order [appealed from] diminishes their property, increases their burdens, or impairs their rights' [, and the] test is meant to be a limitation on appellate standing in order to avoid 'endless appeals brought by myriad of parties who are indirectly affected by every bankruptcy court order.' " *Id.* (quoting *GMAC v. Dykes (In re Dykes),* 10 F.3d 184, 187 (3d Cir.1993), and *Holmes,* 881 F.2d at 940). The appealing party bears "the burden of demonstrating 'a direct and adverse pecuniary interest' in the

orders on appeal." *Williams,* 181 B.R. at 535 (quoting *Ready Mix,* 14 F.3d at 1500). If there is no dispute as to relevant facts, an appellate court may decide the issue of standing without remanding the case for further proceedings. *Ready Mix,* 14 F.3d at 1500; *see Spenlinhauer,* 261 F.3d at 118.

The bankruptcy court addressed whether GMX had standing to file the motion to reopen under 11 U.S.C. § 350(b) and Fed. R. Bankr.P. 5010. The court determined that GMX had a pecuniary interest in the bankruptcy cases as the purchaser of substantially all of the Debtors' assets. The inquiry before this Court, however, is whether the bankruptcy court's order denying the motion to reopen directly and adversely affects GMX's pecuniary interests. *Ready Mix,* 14 F.3d at 1500. We conclude that it does not.

■ Courts have recognized that the act of reopening a closed bankruptcy case does not afford the parties any substantive relief. *Woods,* 173 F.3d at 777 (quoting *DeVore v. Marshack (In re DeVore),* 223 B.R. 193, 198 (9th Cir. BAP 1998), for the proposition that "[t]he reopening of a case is 'merely a ministerial or mechanical act [that] . . . has no independent legal significance and determines nothing with respect to the merits of the case.' "); *see Cusano v. Klein,* 264 F.3d 936, 948 (9th Cir.2001) (noting that order reopening closed case " 'lacks independent legal significance and determines nothing with respect to the merits of the case' ") (quoting *Menk v. LaPaglia (In re Menk),* 241 B.R. 896, 913 (9th Cir. BAP 1999)); *Paine,* 250 B.R. at 107 (recognizing that an order reopening a closed case "was simply a 'mechanical device' that did not afford or deny the debtors any affirmative relief"). Indeed, " '[t]he effect of [11 U.S.C. § 350(b)] is merely to resurrect the court file from the stacks of the closed cases, or even from

the archives, to enable it to receive a new request for relief.'" *Leach v. Buckingham (In re Leach),* 194 B.R. 812, 815 (E.D.Mich.1996) (quoting *In re David,* 106 B.R. 126, 128 (Bankr.E.D.Mich.1989)).

In this case, GMX sought an order from the bankruptcy court reopening the jointly administered cases to permit it to file an adversary complaint initiating an action to enjoin Miller and the other individual plaintiffs from proceeding with the suit pending before the federal court in Texas. The order denying the motion to reopen, standing alone, does not affect GMX pecuniarily. The only interests affected by the bankruptcy court's order are those interests that GMX has as the defendant in the Texas suit. The issues it raised as "other cause" to support its motion to reopen under 11 U.S.C. § 350(b) may be raised in its defense of that suit. *See Paine,* 250 B.R. at 105 (debtors did not have standing to appeal order reopening case to allow creditor to file dischargeability complaint; debtors' only interests were as potential defendants in adversary action that had yet to be filed).

GMX contends that it seeks to enforce the bankruptcy court's prior orders regarding the sale of the Debtors' assets and confirmation of the Debtors' Chapter 11 plan. GMX claims that, in order for the plaintiffs in the Texas case to prevail in that suit, they must prove that the bankruptcy court's orders regarding the sale of the Debtors' assets and the assumption and assignment of the executory contracts did not extinguish their interests in the property purchased by GMX from the Debtors. GMX's interests in this regard may have been sufficient to confer standing for purposes of filing the motion to reopen, but the mere denial of that motion

does not directly and adversely affect GMX's pecuniary interests. *In re Lawrence United Corp.,* 221 B.R. 661, 667 (Bankr.N.D.N.Y.1998) (recognizing that, "[g]enerally, disputes between purchasers of a debtor's assets and third parties are not within the bankruptcy court's jurisdiction," but recognizing that disputes concerning the sale order itself may be sufficient for subject matter jurisdiction). The order denying the motion to reopen similarly does not diminish GMX's property or otherwise increase its burdens or impair its rights. *See Ready Mix,* 14 F.3d at 1500. As the bankruptcy court in this case recognized, GMX remains free to assert its claims as to the effect of the bankruptcy court's prior orders in the suit pending before the federal district court in Texas.

Even if we were to assume, *arguendo,* that GMX had standing to maintain this appeal, we would not conclude that the bankruptcy court abused its "broad discretion" in denying the motion to reopen. *Alpex,* 71 F.3d at 356. The bankruptcy court's order was neither "'arbitrary, capricious, whimsical, or manifestly unreasonable,'" *Black v. M & W Gear Co.,* 269 F.3d 1220, 1227 (10th Cir.2001) (quoting *Coletti v. Cudd Pressure Control,* 165 F.3d 767, 777 (10th Cir.1999)), nor was it based "'on an erroneous conclusion of law'" or lacking a "'rational basis in the evidence.'" *Kansas v. United States,* 249 F.3d 1213, 1227 (10th Cir.2001) (quoting *Hawkins v. City and County of Denver,* 170 F.3d 1281, 1292 (10th Cir.1999)). Likewise, we could not conclude, were we to decide the matter, that the bankruptcy court "clearly erred or ventured beyond the limits of permissible choice under the circumstances." *Wright ex rel. Trust Co. v. Abbott Labs., Inc.,* 259 F.3d 1226, 1233 (10th Cir.2001).

The appeal is dismissed.[2]

**2.** Our dismissal of this appeal renders moot the motion of Petroleum Production Management, Inc., currently pending before this Court, to withdraw as a named party. The motion is therefore denied.