In re Jimmy Dean PEARSON and Jeanette Lucille Pearson, also known as Jeanette Lucille Carlson, Debtors.

Jimmy Dean Pearson and Jeanette Lucille Pearson, Appellants,

v.

Mark R. Stewart, Trustee, Appellee.

BAP No. WY–07–097.

Bankruptcy No. 06–20528.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

July 28, 2008.

Submitted on the briefs: *

Ken McCartney, Law Office of Ken McCartney, Cheyenne, Wyoming, for Appellants.

Mark R. Stewart, Trustee, pro se.

Before McFEELEY, Chief Judge, BOHANON, and THURMAN, Bankruptcy Judges.

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

McFEELEY, Chief Judge.

Debtors/Appellants Jimmy Dean and Jeannette Lucille Pearson ("Debtors") appeal a Confirmation Order of their Third Amended Plan entered by the bankruptcy court for the District of Wyoming. The Debtors argue that the bankruptcy court erred when it denied confirmation of their First Amended Plan on the grounds that under the means test they had wrongfully claimed a vehicle acquisition allowance for two vehicles. We agree with the Debtors that the means test allows a debtor to take the full vehicle ownership/lease expense deduction even when the debtor's vehicle is unencumbered by lease or secured payments at the time of the bankruptcy filing and so REVERSE.

## I. Background

On October 10, 2006, the Debtors filed a petition under Chapter 7 of the Bankruptcy Code. On December 26, 2006, the Debtors voluntarily converted their case to one under Chapter 13 of the Bankruptcy Code. Because the Debtors were over the Wyoming median income, the Debtors' reasonable necessary expenses were calculated under 11 U.S.C. § 707(b)(2),[1] also called "the means test." On the means test form B22C, the Debtors claimed expense deductions for two vehicles: a 1991 Oldsmobile ("Oldsmobile"), and a 1995 Buick La Sabre ("Buick").

Initially the Debtors planned to surrender the Oldsmobile and purchase a new car. Toward that end they filed a Notice of Intent to Incur Debt ("Notice"). The Chapter 13 Trustee, Mark R. Stewart ("Trustee"), objected, arguing that the Debtors were not entitled to claim a vehicle ownership expense on either the Buick or the Oldsmobile because they were not

making payments at the time they filed the case. On February 15, 2007, Stewart also objected to confirmation of their first Chapter 13 plan.

The Debtors' Notice of Intent to Incur Debt was heard on April 3, 2007. Subsequently, the court entered an order on April 11, 2007, finding that the Notice was premature as the Debtors had not found replacement vehicles or entered into contracts for purchase and therefore, the court could not evaluate the reasonableness of such payments. The court further found that the Debtors could not take an ownership expense deduction for a vehicle they intended to surrender.

The Debtors filed a "First Amended Plan and Motions" ("First Plan") on April 27, 2007. The First Plan proposed to keep the Oldsmobile, cramming down the secured debt. The Trustee objected. A hearing on the First Plan was held on June 19, 2007. The court denied the motion on the record, stating that the Debtors could keep the Oldsmobile and could claim a deduction based on the monies owed. The court further found that the Debtors could not claim an ownership expense deduction on the fully paid for Buick. The court ordered that any amended plan must comply with his findings ("Order Denying Debtor's First Plan").

On June 25, 2007, the Debtors filed an amended Form B22C, in which they claimed an ownership expense for one vehicle in the amount of $459 and an older vehicle allowance for the second vehicle in the amount of $200 for a total of $659. A Third Amended Plan was filed on or about July 30, 2007. On August 28, 2007, the bankruptcy court entered an "Order Con-

1. All future statutory references are to Chapter 11 of the United States Code unless otherwise noted.

firming the Debtor's Third Amended Plan" ("Third Amended Plan"). The Third Amended Plan proposed to make a distribution of 54% to unsecured creditors. This appeal timely followed. The parties have consented to this Court's jurisdiction because they did not elect to have the appeal heard by the United States District Court for the District of Wyoming. 28 U.S.C. § 158(c)(1); Fed. R. Bankr.P. 8001; 10th Cir. BAP L.R. 8001–1.

## II. Discussion

This Court, with the consent of the parties, has jurisdiction to hear appeals "from final judgments, orders, and decrees," and "with leave of the court, from other interlocutory orders and decrees" of bankruptcy judges within this Circuit. 28 U.S.C. § 158(a), (b)(1). While Debtor's Third Amended Plan is a final order and the named focus of this appeal, it is not the subject of this appeal. Here, the Debtors argue that the bankruptcy court erred in concluding that under 11 U.S.C. § 707(b)(2)(A)(ii)(I) they could not take an ownership expense deduction on their fully paid for Buick and thus prevented them from including this deduction in the Third Amended Plan. This argument focuses on the Order Denying the Debtor's First Plan. According to the Debtors, we have jurisdiction of this appeal because the Order Denying the Debtor's First Plan was an interlocutory order that became ripe for our review with the confirmation of the Third Amended Plan.

The Tenth Circuit has held that orders denying confirmation without dismissing the underlying petition or proceeding are not final orders for the purposes of appeal. *In re Simons*, 908 F.2d 643, 645 (10th Cir.1990). However, such interlocutory orders merge into the court's relevant final orders. *See McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099,

1103–04 (10th Cir.2002). The identification of the relevant final order in a notice of appeal is sufficient to support appellate jurisdiction to review the earlier interlocutory order. *Id.* This appeal fits within those parameters. However, that does not end our jurisdictional inquiry.

"Because it involves the court's power to entertain the suit, constitutional standing is a threshold issue in every case before a federal court." *O'Connor v. Washburn University*, 416 F.3d 1216, 1222 (10th Cir.2005) (citation omitted). In the absence of a standard for appellate standing in the Bankruptcy Code, the Tenth Circuit has adopted the "person aggrieved" standard. *Holmes v. Silver Wings Aviation, Inc.*, 881 F.2d 939, 940 (10th Cir.1989). The person aggrieved standard "is stricter than the prudential requirements for standing under Article III." *GMX Resources v. Kleban (In re Petroleum Production Management, Inc.)*, 282 B.R. 9, 14 (10th Cir. BAP 2002) (citation omitted). Under the person aggrieved standard, appellate review "is limited to those persons whose rights or interests are directly and adversely affected pecuniarily by the decree or order of the bankruptcy court." *Id.* Only a person aggrieved may appeal a judgment. *Holman v. U.S.*, 505 F.3d 1060, 1068 (10th Cir. 2007). The burden of establishing standing is on the party invoking federal jurisdiction. *Weinman v. Fidelity Capital Appreciation Fund (In re Integra Realty Resources, Inc.)*, 262 F.3d 1089, 1101–02 (10th Cir.2001). The issue here is whether a debtor who has successfully confirmed a plan has standing as a person aggrieved to appeal an interlocutory order that has merged into the final order.

Recently, in *In re Zahn*, 526 F.3d 1140 (8th Cir.2008), the Eighth Circuit addressed the issue now before us. The Eighth Circuit considered whether a debt-

or who abandons an initial plan under the direction of the bankruptcy court and changes the plan terms in order to obtain confirmation has standing under the person aggrieved standard to appeal the final confirmation order. *Id.* The *Zahn* court found that when a debtor amends a plan with provisions which she believes are erroneous, the debtor has standing as a person aggrieved. *Id.* at 1142. The *Zahn* court reasoned "[n]ot to allow a debtor to appeal confirmation of her own plan would require a debtor to comply with a plan that contains provisions the debtor does not believe are required by the Bankruptcy Code, while losing her right to appeal those provisions." *Id.* at 1143.

We agree. Here, the Debtors argue that the court erred in its interpretation of the requirements of the means test and in ordering them to amend their original plan as a condition precedent to obtaining confirmation. Basically, the Debtors argue that the bankruptcy court made erroneous findings during the process that led to the entry of the final decree. The confirmed plan was less financially advantageous to the Debtors than their first plan and so they were directly "pecuniarily affected." We conclude that they fall under the "person aggrieved" standard and so have standing to appeal the Third Amended Plan.

Under § 1325(b)(1), after objection by an unsecured creditor with an allowed claim or a trustee of a Chapter 13 plan that does not provide for payment of all allowed unsecured claims in full, a court may not confirm a plan unless the debtor shows that a plan provides that all of the debtor's projected disposable income received during the applicable period will be paid to unsecured creditors. Sections 1325(b)(2)-(3) specify that if the debtor's current monthly income multiplied by twelve is above the medium income for similar households in the relevant state, then the debtor's reasonable necessary expenses are those as calculated under § 707(b)(2), also called "the means test." Allowable expenses are those as delineated by standards enacted by the IRS and found in the Financial Analysis Handbook which is a subpart of the Internal Revenue Manual.[2] There are two types of standards: national standards and local standards. Local standards address transportation and housing/utilities expenses and vary by county of residence.

 Transportation costs are further subdivided into two categories: ownership costs and operating costs. *In re Wilson,* 383 B.R. 729, 732 (8th Cir. BAP 2008). Any disposable income after the deduction of allowable expenses, must be paid to unsecured creditors. At issue in this appeal is whether ownership costs are deductible when an individual fully owns a vehicle. The statute defines "allowable monthly expenses" as follows:

> The debtor's monthly expenses shall be the debtor's **applicable monthly expense** amounts specified under the National Standards and Local Standards, and the debtor's **actual monthly expenses** for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief....

11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added). The bankruptcy court concluded that under this test, the Debtors could not take the vehicle ownership expense deduction because they fully owned the vehicle and so had no "applicable monthly ex-

---

**2.** The IRS adopted these standards to calculate a taxpayer's ability to repay delinquent taxes. *In re Scarafiotti,* 375 B.R. 618, 623 (Bankr.D.Colo.2007).

penses." The Debtors argue that the bankruptcy court erred because the wording of the statute specifically differentiates between "applicable" and "actual" monthly expenses and therefore, applicable expenses are all those that could apply regardless of whether such expenses are actual. We review questions of statutory interpretation de novo. *Dalton v. Internal Revenue Service*, 77 F.3d 1297, 1299 (10th Cir.1996).

There is a split among courts as to whether a debtor may claim a vehicle ownership deduction in the absence of any loan or lease payments. As explained by a recent case, *In re Ransom*, 380 B.R. 799, 803–06 (9th Cir. BAP 2007), cases on both sides rely on a plain language argument. Both arguments review the language "applicable monthly expenses" in juxtaposition to "actual monthly expenses" to attempt to determine the meaning of the means test. No circuit court has addressed this issue.

Courts that believe that such deductions cannot be taken if the debtor fully owns the car argue that the word "applicable" means that the vehicle deduction expense delineated in the Local Standards is only *relevant* if the debtor has such an expense in the first place. *See, e.g., Ransom*, 380 B.R. at 807.[3] This has been called the Internal Revenue Manual view or (IRM view). *In re Scarafiotti*, 375 B.R. 618, 625

(Bankr.D.Colo.2007). These courts contend that this reading gives "applicable" its customary meaning of "capable of being applied; having relevance" and thereby sufficiently distinguishes it from the phrase "actual monthly expenses." This interpretation is buttressed with the Internal Revenue Manual ("Manual") as an aid in interpreting the means test as a whole. The Manual states "The Taxpayer is only allowed the operating cost or the cost of transportation." IRS Collection Financial Standards, Part 5, Chapter 15, Section 1.9, Subsection 1.B, available at http://www.irs.gov/individuals/article/0,,id=96543,00.html.

*Ransom* adopts this argument. It further observes that the

> adjective 'applicable' modifies the meaning of the noun 'monthly expense amounts;' it indicates that the deduction of the monthly expense amount specified under the Local Standard for the expense becomes relevant to the debtor (i.e., appropriate or applicable to the debtor) when he or she in fact has such an expense.

*Id.* at 807. *Ransom* notes that this reading aligns with the purposes behind BAPCPA which are "to ensure that debtors repay as much of their debt as reasonably possible." *Id.* at 807. Finally, *Ransom* rejects the equitable argument that

---

**3.** The following courts concluded that the debtor who owns a vehicle free and clear of any ownership or lease expenses may not claim the deduction: *Grossman v. Sawdy*, 384 B.R. 199 (E.D.Wis.2008); *Wieland v. Thomas*, 382 B.R. 793 (D.Kan.2008); *In re Meade*, 384 B.R. 132 (W.D.Tex.2008); *In re Wilson*, 383 B.R. 729 (8th Cir. BAP 2008); *Fokkena v. Hartwick*, 373 B.R. 645 (D.Minn.2007); *In re Ross–Tousey*, 368 B.R. 762 (E.D.Wis.2007); *In re Bennett*, 371 B.R. 440 (Bankr.C.D.Cal. 2007); *In re Brown*, 376 B.R. 601 (Bankr. S.D.Tex.2007); *In re Ceasar*, 364 B.R. 257 (Bankr.W.D.La.2007); *In re Cole*, 371 B.R. 454 (Bankr.W.D.Wash.2007); *In re Devilliers*, 358 B.R. 849 (Bankr.E.D.La.2007); *In re*

*Howell*, 366 B.R. 153 (Bankr.D.Kan.2007); *In re Slusher*, 359 B.R. 290 (Bankr.D.Nev.2007); *In re Talmadge*, 371 B.R. 96 (Bankr.M.D.Pa. 2007); *In re Barraza*, 346 B.R. 724 (Bankr. N.D.Tex.2006); *In re Carlin*, 348 B.R. 795 (Bankr.D.Or.2006); *In re Hardacre*, 338 B.R. 718 (Bankr.N.D.Tex.2006); *In re Harris*, 353 B.R. 304 (Bankr.E.D.Okla.2006); *In re Lara*, 347 B.R. 198 (Bankr.N.D.Tex.2006); *In re McGuire*, 342 B.R. 608 (Bankr.W.D.Mo.2006) *abrogation recognized by In re Riding*, 377 B.R. 239 (Bankr.W.D.Mo.2007); *In re Oliver*, 350 B.R. 294 (Bankr.W.D.Tex.2006); *In re Wiggs*, No. 06–B–70203, 2006 WL 2246432 (Bankr.N.D.Ill. Aug.4, 2006).

the vehicle ownership expense permits the debtor to augment the vehicle operating expense for the unforeseen needs of vehicle ownership such as major repairs. *Id.* at 808. *Ransom* notes that § 707(b)(2)(B) allows additional expenses based on "special circumstances" and that is the section to which a debtor should turn should unforeseen major expenses occur. *Id.*

In contrast, an almost equal number of courts have held that a debtor may take a vehicle ownership expense although the debtor owns the vehicle in full.[4] This approach has been called the Plain Language View. *Scarafiotti,* 375 B.R. at 626. These courts conclude that the word "applicable" refers to the amount listed in the table of Local Standards. Under this view, the vehicle ownership expense applies even though the debtor may not have an actual expense associated with the vehicle. The interpretation of these courts rests on an analysis of the different meanings of the word "applicable" and the term "actual." These courts argue that "actual expenses" are only those expenses that fall under "Other Necessary Expenses."

Courts adopting the Plain Language View reject the Manual as the final arbiter of the meaning of the word "applicable" for the following two reasons: (1) the Manual as a whole differs in purpose from the Bankruptcy Code; and (2) Congress did not incorporate the Manual into the Bankruptcy Code. They further contend that the Plain Language View is in keeping with the policy behind BAPCPA. According to these courts a primary purpose of BAPCPA is "to impose a 'rigid and inflexible' set of expense standards." *Scarafiotti,* 375 B.R. at 630 (quoting H.R. Rep. 109–31 at 12). These courts conclude that applying one set of standards regardless of ownership will meet these goals.

We conclude that the Plain Language View is better reasoned. The Supreme Court has stated: "(t)he plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters." *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). The means test refers to both "applicable expenses" and "actual expenses." An important maxim of statutory construction is "that '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Duncan v. Walker,* 533 U.S. 167, 173, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001)

---

4. The following courts concluded that the debtor who owns a vehicle free and clear of any transportation ownership or lease expense may claim the deduction: *In re McIvor,* No. 06–42566, 2006 WL 3949172 (Bankr. E.D.Mich. Nov. 15, 2006); *In re Chamberlain,* 369 B.R. 519 (Bankr.D.Ariz.2007); *In re Crews,* Nos. 06–13117, 06–15255, 2007 WL 626041 (Bankr.N.D.Ohio Feb.23, 2007); *In re Enright,* No. 06–10747, 2007 WL 748432 (Bankr.M.D.N.C. Mar.6, 2007); *In re Sawdy,* 362 B.R. 898 (Bankr.E.D.Wis.2007), *vacated by In re Sawdy,* 362 B.R. 898 (Bankr.E.D.Wis. 2008); *In re Scarafiotti,* 375 B.R. 618 (Bankr. D.Colo.2007); *In re Swan,* 368 B.R. 12 (Bankr.N.D.Cal.2007); *In re Watson,* 366 B.R. 523 (Bankr.D.Md.2007); *In re Zak,* 361 B.R. 481 (Bankr.N.D.Ohio 2007); *In re Demonica,* 345 B.R. 895 (Bankr.N.D.Ill.2006); *In re Fowler,* 349 B.R. 414 (Bankr.D.Del.2006); *In re Grunert,* 353 B.R. 591 (Bankr.E.D.Wis. 2006), *abrogated by In re Wilson,* 383 B.R. 729 (8th Cir. BAP 2008); *In re Haley,* 354 B.R. 340 (Bankr.D.N.H.2006); *In re Hartwick,* 352 B.R. 867 (Bankr.D.Minn.2006), *rev'd by Fokkena v. Hartwick,* 373 B.R. 645 (D.Minn. 2007); *In re Naslund,* 359 B.R. 781 (Bankr. D.Mont.2006); *In re Prince,* No. 06–10328C–7G, 2006 WL 3501281 (Bankr.M.D.N.C. Nov.30, 2006); *In re Wilson,* 356 B.R. 114 (Bankr.D.Del.2006).

(quoting *Bates v. U.S.*, 522 U.S. 23, 29–30, 118 S.Ct. 285, 139 L.Ed.2d 215 (1997)). Under this maxim, a term that is meant to mean one thing should be repeated to mean the same thing in the same act. The IRM view ignores this maxim when it tries to argue that "applicable" expenses are nothing more than relevant expenses or capable of being applied expenses. If you adopt this IRM premise then "applicable expenses" are in reality only "actual" expenses. If Congress meant "actual expenses" in the first part of § 707(b)(2)(A)(ii)(I), it would have used that term instead of "applicable monthly expense."

▉▉▉▉ We further observe that the IRM view gives deference to the IRS's interpretation of its own Manual without adequately considering the words of the Bankruptcy statute under consideration. "[A] reviewing court should not defer to an agency position which is contrary to an intent of Congress expressed in unambiguous terms." *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 476, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992). Most important, the IRM approach does not adequately acknowledge that Congress did not incorporate the entire IRS Manual into the means test. "[W]here, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *Ron Pair*, 489 U.S. at 241, 109 S.Ct. 1026 (quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)). For these reasons we conclude that the bankruptcy court erred when it determined that the debtors could not take the ownership expense deduction for their fully owned vehicle under 11 U.S.C. § 707(b)(2)(A)(ii)(I).

### III. Conclusion

For the reasons set forth above, we REVERSE and REMAND for proceedings consistent with this opinion.

THURMAN, Bankruptcy Judge, specially concurring.

When the issue in this appeal came before me as a member of this panel, I was hesitant to endorse the concept of allowing Chapter 13 debtors an ownership deduction for vehicles that they own free and clear. My instincts tell me that the vehicle ownership deduction is supposed to cover debtors' monthly payments on vehicles that are subject to either secured debt or a lease. Allowing this deduction when a debtor actually has no such obligation appears to be a fiction, or rather, a "phantom deduction." Nonetheless, my reading of the commentary and the many cases on both sides of this issue has persuaded me that a fair reading of § 1325(b)(3), together with § 707(b)(2)(A)(ii)(I), compels the conclusion that, in determining the return to unsecured creditors, deduction of a vehicle expense under these circumstances is allowed.

However, I cannot conclude that these statutes are either "plain" or "clear," but I acknowledge that they are clear enough to support this decision. For that reason alone, I find the labels used to reference the various decisions on this issue, both by this decision and others, to be problematic. Characterizing decisions that differ in outcome from the present ruling as either "incorrect" or as falling outside of the "Plain Language View" is inappropriate.[1] The "IRM View" is supported by a host of thoughtful and considered decisions, all of which conclude that the proper interpretation of the statutory language is that such a deduction is specifically disallowed.[2] I

---

1. *See* Majority op. at 713, fn. 4.

2. *See* Majority op. at 712, fn. 3.

prefer to label the two competing views as the "Numbers View" and the "Manual View," or to at least adopt some title other than the currently used "Plain Language View." In my opinion, these statutes simply do not evince "Plain Language." This becomes even more apparent upon review of the cases, in which the terms "standards," "interpretations," and "manual" are frequently used interchangeably when referring to IRS publications. By my reading, "standards" are the actual numbers that debtors may use on Form B22C pursuant to the Bankruptcy Code, whereas the "manual" supplies the IRS's interpretations of those numbers within a different context, which were not adopted by the Bankruptcy Code.

In any event, in reaching my conclusion in this case I determined that, as a matter of fairness, it makes little sense to deny an ownership deduction to a frugal debtor who, although he has fully paid for his used car, finds himself in need of bankruptcy relief, while allowing the deduction to a more "aggressive" debtor who has acquired a late model car by incurring a large secured debt. I was also persuaded by Judge Rhodes's excellent reasoning in *In re Kimbro*,[3] to the effect that "the expenses of vehicle ownership are the fixed expenses that an owner incurs," including "depreciation, insurance, licensing fees and taxes," and that "every vehicle owner incurs ownership expenses, and that is so regardless of debt or lease payments."[4]

Despite this case's outcome, I am not persuaded that the bankruptcy courts are without some flexibility in determining the amount and applicability of income deductions. Thus, I do not believe that today's decision in any way undermines the concept that bankruptcy courts have both the power and the obligation to deviate from the numbers derived on Form B22C under certain circumstances, as I have ruled on prior occasions. Thus, I am keenly aware of, and still fully support, the holdings in *Martin*, that deviation from Form B22C may be justified by a debtor's lack of compliance with the good faith requirement set forth in 11 U.S.C. § 1325(a)(3), and in *Jass* and *Lanning*, that such deviation may be justified by significant changes in circumstances that render the numbers so derived either unrealistic or unfair.[5] These cases in fact support today's outcome, in that they stand for the proposition that bankruptcy courts should exercise some discretion based on the individual cases before them, and are not and cannot be, bound by the generalized discretionary determinations made by other branches of government.

Finally, as the majority points out, "Congress did not incorporate the entire IRS Manual into the means test." In fact, as noted in *Kimbro*, a previous reference to the IRS's "financial analysis for expenses" was removed from § 707(b)(2)(A)(ii)(I) when it was enacted in

---

3. *In re Kimbro*, 389 B.R. 518 (6th Cir. BAP 2008).

4. *Id.* at 530–31.

5. *See, e.g., In re Martin*, 373 B.R. 731, 736 (Bankr.D.Utah 2007) (court must find *both* that debtors have complied with Form B22C and that plan is proposed in good faith); *In re Jass*, 340 B.R. 411, 418 (Bankr.D.Utah 2006) (entries on Form B22C may be altered based on significant changes in circumstances that render them inaccurate or unfair); *In re Lanning*, 380 B.R. 17 (10th Cir. BAP 2007) (Form B22C's disposable income is a "starting point" for determining debtor's *projected* disposable income). The holdings in *Jass* and *Lanning* have been challenged elsewhere, but until our circuit rules otherwise, I believe they should be followed.

2005.[6] This suggests that Congress intended to adopt only the dollar amounts set forth in the IRS Standards, without necessarily adopting the interpretations of those numbers in the Manual. In this respect, I note that the additional $200 "older car" operating expense given to the debtors in this case is derived from the Manual rather than the Standards.[7] Accordingly, such a deduction should not be given under the view we have adopted in this case.[8] However, because the Trustee did not appeal that award in this case, we do not disturb it here.

Accordingly, although not entirely persuaded that the statutory language before us is in fact "plain," I concur with the result reached by the majority.

---

6. *In re Kimbro*, 389 B.R. at 525–26.

7. I.R.M. 5.8.5.5.2(3).

8. *See, e.g., In re Herbord*, 2008 WL 149972 (Bankr.S.D.Ill.2008).