William L. Fava, Mitchell & Cunningham, Southaven, MS, for Debtor.

**In re Curtis WHITE and Lori Ann White.**

**No. 08–10910–DWH.**

United States Bankruptcy Court, N.D. Mississippi.

Sept. 9, 2008.

*OPINION*

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is a motion for reconsideration filed by the Chapter 13 Trustee ("Trustee"); a response to said motion having been filed by the debtors, Curtis White and Lori Ann White; oral arguments and memoranda of law having been respectively presented and submitted by the parties; and the court, having heard and considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as

defined in 28 U.S.C. § 157(B)(2)(A), (L), and (O).

## II.

On March 5, 2008, the debtors filed a voluntary petition for relief pursuant to Chapter 13 of the Bankruptcy Code. Along with their petition and schedules, they filed a "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income," referred to hereinafter as "Form B22C." Without dispute, the debtors' income is greater than the applicable median family income for a comparable household in the State of Mississippi. As such, they would generally be referred to as above median income debtors. In determining projected disposable income for purposes of the confirmation of their proposed Chapter 13 plan, the following Bankruptcy Code[1] sections must be considered, to-wit:

1) Section 1325(b)(1)(B) which provides that if the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, the court may not approve the plan unless, as of the effective date of the plan, the plan provides that all of the debtors' projected disposable income, to be received in the applicable commitment period beginning on the date that the first payment is due under the plan, would be applied to make payments to unsecured creditors.

2) Section 1325(b)(3) which provides that the amounts reasonably necessary to be expended for the purpose of calculating disposable income should be determined in accordance with subparagraphs (A) and (B) of § 707(b)(2) for above median income debtors.

The expenses, described in § 707(b)(2)(A) and (B), are those that are specified for the "means test" promulgated under the Bankruptcy Abuse Prevention Consumer Protection Act of 2005 (BAPC-PA). These expenses are delineated pursuant to standards enacted by the Internal Revenue Service which are found in the Financial Analysis Handbook, a part of the Internal Revenue Manual. These standards were adopted by the Internal Revenue Service to assist their field agents in assessing a tax payer's ability to repay delinquent taxes. There are two types of standards: national standards which apply nationwide to specific categories of expenses and local standards which apply to transportation and housing/utilities expenses which vary by the county of residence in each state.

On their Form B22C, the debtors herein claimed the following expense deductions which are relevant to this proceeding:

Line 27(A) (Local Standards: transportation; vehicle operation/public transportation expense)—2 or more vehicles—$362.00.

Line 28 (Local Standards: transportation ownership/lease expense; Vehicle 1):

(a) IRS Transportation Standards, Ownership Costs—$478.00

(b) Average Monthly Payment for any debts secured by Vehicle 1, as stated in Line 47–$416.67

(c) Net ownership/lease expense for Vehicle 1–$61.33

Line 29 (Local Standards: transportation ownership/lease expense; Vehicle 2)-$478.00

The trustee objected to the debtors' deduction of the $478.00 ownership expense

---

**1.** Hereinafter, all Code sections will be considered as sections of the U.S. Bankruptcy Code unless designated otherwise.

on Line 29 because the debtors own their second vehicle free and clear of any debt. This objection and the debtors' response form the issue to be determined by the court. At the conclusion of the initial hearing on the trustee's objection, the court decided the issue in favor of the debtors, and an order was entered overruling the trustee's objection on June 26, 2008. Because this is such a hotly disputed issue, the trustee filed the motion to reconsider in order to more thoroughly address the numerous decisions that have considered this identical question.

### III.

This issue was first addressed by a Bankruptcy Appellate Panel in the case of *In re Ransom*, 380 B.R. 799 (9th Cir. BAP2007). In that decision, the court relied significantly on the use of the adjective "applicable" in § 707(b)(2)(A)(ii)(I) and refused to allow the debtor to deduct the standard ownership allowance for a vehicle which was unencumbered by debt. The court commented as follows:

> Section 707(b)(2)(A)(ii)(I) provides, in relevant part, that "[t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under ... the Local Standards." As set forth in the statute, the adjective "applicable" modifies the meaning of the noun "monthly expense amounts;" it indicates that the deduction of the monthly expense amount specified under the Local Standard for the expense becomes relevant to the debtor (i.e., appropriate or applicable to the debtor) when he or she in fact has such an expense.
>
> The ordinary, common meaning of "applicable" further impels us to this conclusion. "Applicable," in its ordinary sense, means "capable of or suitable for being applied." MERRIAM–WEB-

STER'S COLLEGIATE DICTIONARY 60 (11th ed.2005). Given the ordinary sense of the term "applicable," how is the vehicle ownership expense allowance *capable of being applied* to the debtor is he does not make any lease or loan payments on the vehicle? In other words, how can the debtor assert a deduction for an expense he does not have? If we granted the debtor such an allowance, we would be reading "applicable" right out of the Bankruptcy Code. *See also Ross–Tousey,* 368 B.R. at 765.

*Ransom,* 380 B.R. at 807–08.

The holding in *Ransom* has been criticized by subsequent decisions. The court in *In re Sawicki,* 2008 WL 410229 (Bankr. D.Ariz.), thoroughly analyzed the issue and, while it concurred with the *Ransom* result because it felt bound by precedent to follow the Ninth Circuit BAP decision, it concluded that the *Ransom* logic was "flawed." Although the following excerpt from *Sawicki* is lengthy, this court feels that the points discussed are too important to omit:

> [T]he BAP relied on *In re Ross–Tousey,* 368 B.R. at 766, for the premise that the statute is concerned with protecting the debtor's ability to continue to own a car and that when a debtor has no expense there is no need for a deduction.
>
> The BAP, however, failed to address the point made *In re Fowler* that Congress did not refer to the IRS's financial analysis (found in the Internal Revenue Manual (IRM)) in the final bill that passed under BAPCPA for determining expense allowances, as it had in previous versions of the bill. *Fowler* logically concluded that removal of the reference is indicative of Congressional intent that courts should not be bound by the IRM. The BAP does note in footnote 18 that Congress looked to the IRS Manual for definitions of certain terms including

"necessary expenses" and that Congress also cited to the Manual in describing the Local Standards. As pointed out by *In re Swan*, 368 B.R. at 19, there is a substantial difference between relying on the IRM for definitions and relying on the IRM, specifically § 5.8.5.5.2.3, for determining how an expense should be calculated under § 707(b)(2)(A)(ii)(I). To reach the BAP's conclusion in *Ransom*, a court would have to adopt the wholesale language of the IRM. Even the BAP in footnote 8 concedes that although the Manual is helpful in some contexts it does not give meaning to the statute itself.

The BAP further states in footnote 8 that the statutory language plainly read does not allow the debtor to deduct a vehicle ownership expense when he has no loan or lease payment. The BAP, without basis reads the term "applicable" as indicating that the deduction of the monthly expense under the Local Standard only becomes relevant when the debtor has such an expense. The BAP then provides a dictionary definition of the word "applicable" as "capable of or suitable for being applied." Based on the dictionary definition the BAP argues that if a debtor does not make a lease or loan payment the vehicle ownership expense allowance is not capable of being applied and then concludes that such an allowance would be reading "applicable" right out of the Bankruptcy Code.

This court concludes that the BAP's analysis is flawed. The BAP has developed a definition for "applicable" that is without a principled basis and glosses over what has been the heart of the controversy. The BAP fails to address why Congress felt it was necessary to identify two separate expense deductions under § 707(b)(2)(A)(ii)(I). The BAP fails to address why if only actual

expenses are to be used in considering the vehicle ownership deduction Congress explicitly separated "applicable monthly expense amounts specified under the National Standards and Local Standards" from actual monthly expenses for the categories specified as "Other Necessary Expenses" in the statute.

. . . . .

The starting point for statutory interpretation is a review of the language used by Congress in the current version of the law. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999). Where the text is plain, the court is to apply the statute as written, unless the application would lead to absurd results. *Lamie v. U.S. Trustee*, 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). Meaning must be given to a statute's every word. *Miller v. United States*, 363 F.3d 999, 1008 (9th Cir.2004). A subsection of a statute is defined in the context of the entire statute and the statutory scheme as a whole. *In re Rufener Const., Inc.*, 53 F.3d 1064 (9th Cir.1995).

Section 707(b)(2)(A)(ii)(I) reads in part:

> [t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides.

A plain reading of § 707(b)(2)(A)(ii)(I) leads to the conclusion that the phrase "applicable monthly expense amounts" and "actual monthly expenses" are two

separate items requiring two separate types of calculations for expense deductions under the Means Test. Contrary to what other courts have suggested, including *In re Ross–Tousey,* the use of the two different adjectives, "applicable" and "actual," indicates that Congress intended for the two terms to have different if not opposite meanings. In support of the separate definitions is legislative history surrounding the enactment of the BAPCPA. Congress's omission, in the final version of the BAPCPA bill that was passed, of any reference to the IRS financial analysis for determining expense allowances and the inclusion of the term "actual expenses" for determining other necessary expenses shows the intent by Congress to differentiate between "applicable" monthly expenses and "actual" monthly expenses.

*Sawicki,* 2008 WL 410229 at *3–4.

The most recent BAP decision addressing this issue is *In re Pearson,* 390 B.R. 706 (10th Cir.BAP2008). In *Pearson,* the court permitted the above median income debtors to deduct the standard transportation ownership expense on their Form B22C even though they owed no debt on their vehicle. As a "scorecard," the court in footnotes 3 and 4 cited the opinions that had decided this issue for and against the debtors' position. The court offered the following comment:

> There is a split among courts as to whether a debtor may claim a vehicle ownership deduction in the absence of any loan or lease payments. As explained by a recent case, *In re Ransom,* 380 B.R. 799, 803–06 (9th Cir.BAP2007), cases on both sides rely on a plain language argument. Both arguments review the language "applicable monthly expenses" in juxtaposition to "actual monthly expenses" to attempt to determine the meaning of the means test. No circuit court has addressed this issue.

Courts that believe that such deductions cannot be taken if the debtor fully owns the car argue that the word "applicable" means that the vehicle deduction expense delineated in the Local Standards is only **relevant** if the debtor has such an expense in the first place. *See, e.g., Ransom,* 380 B.R. at 807. This has been called the Internal Revenue Manual view or (IRM view). *In re Scarafiotti,* 375 B.R. 618, 625 (Bankr.D.Colo. 2007). These courts contend that this reading gives "applicable" its customary meaning of "capable of being applied; having relevance" and thereby sufficiently distinguishes it from the phrase "actual monthly expenses." This interpretation is buttressed with the Internal Revenue Manual ("Manual") as an aid in interpreting the means test as a whole. The Manual states "The Taxpayer is only allowed the operating cost or the cost of transportation." IRS Collection Financial Standards, Part 5, Chapter 15, Section 1.9, Subsection 1.B, available at http://www.irs.gov/individuals/article/0,, id=96543,00.html.

In contrast, an almost equal number of courts have held that a debtor may take a vehicle ownership expense although the debtor owns the vehicle in full. This approach has been called the Plain Language View. *Scarafiotti,* 375 B.R. at 626. These courts conclude that the word "applicable" refers to the amount listed in the table of Local Standards. Under this view, the vehicle ownership expense applies even though the debtor may not have an actual expense associated with the vehicle. The interpretation of these courts rests on an analysis of the different meanings of the word "applicable" and the term "actual." These courts argue that "actual expenses" are only

those expenses that fall under "Other Necessary Expenses."

Courts adopting the Plain Language View reject the Manual as the final arbiter of the meaning of the word "applicable" for the following two reasons: (1) the Manual as a whole differs in purpose from the Bankruptcy Code; and (2) Congress did not incorporate the Manual into the Bankruptcy Code. They further contend that the Plain Language View is in keeping with the policy behind BAPCPA. According to these courts a primary purpose of BAPCPA is "to impose a 'rigid and inflexible' set of expense standards." *Scarafiotti,* 375 B.R. at 630 (quoting H.R. Rep. 109–31 at 12, U.S.Code Cong. & Admin.News 2005, p. 88). These courts conclude that applying one set of standards regardless of ownership will meet these goals.

We further observe that the IRM view gives deference to the IRS's interpretation of its own Manual without adequately considering the words of the Bankruptcy statute under consideration. "[A] reviewing court should not defer to an agency position which is contrary to an intent of Congress expressed in unambiguous terms." *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 476, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992). Most important, the IRM approach does not adequately acknowledge that Congress did not incorporate the entire IRS Manual into the means test. "[W]here, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.' " *Ron Pair,* 489 U.S. at 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)). For these reasons we conclude that the bankruptcy court erred when it determined that the debtors could not take the ownership expense deduction for their fully owned vehicle under 11 U.S.C. § 707(b)(2)(A)(ii)(I).

*Pearson,* 390 B.R. at 712–14.

An early commentary on this issue can be found in Judge Eugene R. Wedoff's article, "Means Testing in the New § 707(b)," American Bankruptcy Law Journal, Vol. 79, pages 256–258, where Judge Wedoff offered the following:

" . . . [t]here is a question of whether an ownership expense may be claimed by a debtor who owns a car free of any lien. The language quoted from the IRM (Internal Revenue Manual) states that if the debtor makes no car payment, the ownership expense amount may not be claimed. Indeed, this result follows necessarily from the IRM's treatment of the Local Standards as caps on actual expenditures: if a taxpayer has no car payments, the taxpayer obviously cannot claim a Local Standard amount intended to cap actual car payment expenses. However, since the means test treats the Local Standards not as caps but as fixed allowances, it is more reasonable to permit a debtor to claim the Local Standards ownership expense based on the number of vehicles the debtor owns or leases, rather than on the number for which the debtor makes payments. This approach reflects the reality that a car for which the debtor no longer makes payments may soon need to be replaced (so that the debtor will actually have ownership expenses), and it avoids arbitrary distinctions between debtors who have only a few car payments left at the time of their bankruptcy filing and those who finished making their car payments just before the filing . . ."

Eugene R. Wedoff, *Means Testing in the New § 707(b),* 79 American Bankruptcy L.J. 256, 257–58.

Judge Wedoff is recognized as one of the premier commentators on the operation of BAPCPA's "means test." His theory regarding this issue is insightful and well reasoned. Unfortunately, the drafters of the statutes in question, which are less than clear when considered in pari materia, provided no legislative guidance as to their practical implementation. Thus, those that are called upon to construe the statutes, particularly as they interface with each other, can only theorize or speculate about their proper application. This is evidenced by the significant numbers of opinions generated on both sides of the issue.

## IV.

In order to more thoroughly analyze the issue, the following additional factors were considered:

1) Any vehicle will depreciate during the course of the applicable commitment period for a Chapter 13 bankruptcy case, usually 60 months for above median income debtors. During this time frame, debtors frequently will be required to replace the vehicle. Vehicles that are debt free usually are older vehicles which will ordinarily require greater maintenance than newer vehicles.

2) On Line 27A of Form B22C, debtors are permitted to deduct as a transportation expense the local standard vehicle *operation* allowance regardless of whether there is a debt owed on the vehicle. According to the Internal Revenue Service Collection Financial Standards, which, as noted earlier, are intended for use in assessing the ability to repay delinquent taxes, the operation costs include maintenance, repairs, insurance, fuel, registrations, licenses, inspections, parking and tolls. These amounts, however, do not include personal property taxes which conceivably are deductible on Line 30.

3) If the standard ownership allowance is not deductible when the debtors own the vehicle free and clear, does that not encourage the debtors to incur debt, secured by the vehicle, or even acquire a new vehicle, just prior to filing bankruptcy? The court notes in this case that the Chapter 13 trustee has stated that even a small debt obligation on the vehicle as low as $1.00 per month is sufficient to trigger the ability to deduct the entire standard ownership expense.

4) When a vehicle is owned free and clear, allowing debtors to take the standard ownership deduction effects an "artificial" reduction in the funds that would otherwise be available to pay unsecured creditors. This would not appear to comport with the intent of § 1325(b)(1)(B), which states that the Chapter 13 plan must provide for the payment of all of the debtors' projected disposable income to unsecured creditors over the applicable commitment period.

5) Would it not be a better approach, and perhaps more just, to disallow the standard ownership deduction at confirmation when there is no debt on the vehicle, and then allow the debtors to move to modify the plan post-confirmation if a need arises to replace the vehicle by incurring new debt?

## V.

Clearly, there are "pros and cons" as to whether above median income Chapter 13 debtors, in calculating projected disposable income, should be able to deduct the standard vehicle ownership allowance when the

particular vehicle is owned free and clear of debt. Reliance on the insertion of the word "applicable" in § 707(b)(2)(A)(ii)(I), as a basis to form a decision concerning this issue, without some statement of Congressional interest, is an insufficient rationale. Likewise, the relevant statutes, when considered together, do not provide clear guidance as to their practical application. Their conjunctive meaning is far from "plain." After weighing the competing factors, this court believes that the language in § 1 325(b)(1)(B) simply does not contemplate an "artificial" deduction when there is no underlying debt. This is consistent with one of the primary objectives of BAPCPA which is to ensure that debtors repay as much of their debt as reasonably possible. See, *Ransom*, 380 B.R. at 808. If there is a change in circumstances post-confirmation necessitating the replacement of the debtors' vehicle, the court finds that it would be a better policy to liberally allow a plan modification pursuant to § 1329(a) to accommodate this need. This is an approach that deals with reality, rather than artificiality. Refusing to permit the debtors to deduct an ownership expense when there is no actual underlying debt results in an increased distribution to unsecured creditors, even if only for a temporary period, with monies that are actually available. This may not be a perfect solution. However, since the debtors can deduct the standard *operation* expense, as well as, the annual personal property taxes attributable to the vehicle, this approach seems to be fairer than allowing the debtors to deduct the *ownership* expense when there is no debt which could understandably be perceived as a "windfall" for the debtors. This rationale conforms to the Congressional intent, as perceived by this court, of § 1325(b)(1)(B).

Consequently, the Chapter 13 trustee's motion for reconsideration is well taken. It will be sustained by a separate order

prohibiting the debtors' deduction of the standard ownership allowance for their second vehicle since they own this vehicle free and clear.