**In re Curtis Neal HEAPE and Billie Jean Heape, Debtors.**

**Curtis Neal HEAPE and Billie Jean Heape, Plaintiffs,**

v.

**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF INDEPENDENCE, KANSAS, Defendant.**

**No. 90–1446–C.
Bankruptcy No. 86–10096.
Adv. No. 89–5170.**

United States District Court,
D. Kansas.

Nov. 27, 1991.

Donald B. Clark, Wichita, Kan., for appellants.

Mary P. Hesse, Redmond, Redmond & Nazar, Wichita, Kan., for appellee.

## MEMORANDUM AND ORDER

CROW, District Judge.

This case comes before the court upon Curtis Neal Heape and Billie Jean Heape's appeal from the decision of the bankruptcy court. The Heapes received a discharge of their debts under Chapter 7 on February 2, 1987. The Heapes subsequently divorced. Following the Heapes' divorce, a dispute developed between Billie Heape and First Federal Savings and Loan Association of Independence, Kansas (First Federal) over $4,647.53 deposited in a savings account at First Federal. The Heapes initiated an adversary action in bankruptcy to determine whether First Federal's refusal to release the funds in the account constituted a violation of 11 U.S.C. § 524(a)(2). The bankruptcy court, considering stipulated facts, dismissed the Heapes' complaint, concluding that it did not have jurisdiction to consider the case as the dispute involved assets outside the bankruptcy estate or post-petition obligations.

### Stipulated Facts

The parties have stipulated to the following facts:

1. The debtors filed for relief in bankruptcy under Chapter 7 of the Bankruptcy Code on January 16, 1986.

2. First Federal was scheduled as a secured creditor with a lien on the debtors' homestead. The debtors claimed the homestead as exempt.

3. On March 12, 1986 First Federal filed a motion to lift the automatic stay. This was granted on May 6, 1986.

4. Debtor Billie Heape sent a letter addressed to Chester Woel at First Federal. It stated in part that:

This letter is to inform you [that] we have open[ed] up a saving account with you. Your house payment[s] will be but [sic] in this account until this bankruptcy [sic] is over. We are keeping up the insurance [sic] on the house. The payment that we are putting in the account will show you our good faith.

We would like to have the same interest [sic] rate as we have now. The reason for this [is that] we can't afford higher payment[s].

5. On March 24, 1986 the debtors opened the account with First Federal. They made various deposits and withdrawals until July 29, 1986 at which time there was a balance of $4,244.27.

6. The debtors made both deposits to, and withdrawals from, the account. All transactions were made after the filing of the bankruptcy petition.

7. An order of discharge was entered on February 2, 1987.

8. The debtors were orally informed that First Federal intended to file a foreclosure action to wipe out other junior lien-holders in anticipation of refinancing the loan.

9. On October 7, 1987 First Federal filed a suit in state court to foreclose on the property. The journal entry of judgment in the foreclosure case was entered on December 22, 1987.

10. The property was sold at a sheriff's sale on February 4, 1988. First Federal was the successful bidder. The foreclosure action and the sale extinguished several junior liens and encumbrances on the property.

11. Gary L. Overfield, vice president of First Federal, wrote the debtors on February 12, 1988. The letter stated in part:

I want to inform you of the progress that has been made in clearing the title to your home.

Our sheriff's sale was held on February 4, 1988. First Federal was the successful bidder at the sale which translates into the simple fact that First Federal and you are the only parties with an interest remaining in the home and real estate.

Now is the time for you to get in contact with us to renegotiate your loan. Please contact us as soon as possible.

12. The debtors have subsequently divorced. The divorce court awarded the account in issue to debtor Billie Heape.

13. Billie Heape wrote a demand letter to First Federal requesting the account be released to her. When she attempted to

withdraw the money from the account, First Federal froze the account. The savings account had a balance of $4,647.53 when it was frozen.

14. First Federal never asked the debtors to reaffirm the debt and no written reaffirmation agreement was executed by the debtors.

15. The parties stipulated to the jurisdiction of the Bankruptcy Court and consented to the trial and entry of a final order by the Bankruptcy Court.

16. On August 23, 1990, the bankruptcy court filed its memorandum opinion denying the Heapes' complaint to recover monies held by First Federal. After first discussing the limited jurisdiction of the bankruptcy court, the bankruptcy court concluded:

> The controversy concerns the parties [sic] rights to monies in a savings account opened over two months after the debtors filed their petition in bankruptcy. (Stipulations of Facts 1, 5 and 6.) This property is clearly no part of the bankruptcy estate and its disposition has no effect upon the bankruptcy estate. 11 U.S.C. § 541. Further, First Federal's tenuous claim to the monies is premised on a claim for fair rental value for the alleged postpetition occupancy of the homestead. (Defendant's Memorandum Brief, p. 12–13, 21–22.) Based upon the facts and allegations, any obligation for rent is a postpetition obligation. The debtors' obligation to pay reasonable postpetition rent to First Federal has no impact upon the handling and administration of the debtors' estate.

> While this controversy has roots in the prebankruptcy relationship between the parties, that slender connection is insufficient to confer jurisdiction on the Court. Were the creditor attempting to offset the postpetition deposits against a deficiency from foreclosure of the homestead, this Court would clearly have jurisdiction. Conversely, if a creditor were attempting to enforce a postpetition obligation against prepetition assets exempted by the debtor, the Court would lack jurisdiction. The Court's jurisdiction does not attach to every action affecting a debtor postpetition, but only to those which involve both prepetition liabilities and assets.

> The Court's limited subject matter jurisdiction does not encompass assets outside the bankruptcy estate or postpetition obligations. Accordingly, the Court must dismiss the complaint.

17. The Heapes timely appeal.

### Standard of Review

On appeal from the bankruptcy court, the district court sits as an appellate court. *See* 28 U.S.C. § 1334(a). Findings of fact are not to be set aside unless clearly erroneous; conclusions of law are reviewed *de novo*. *Virginia Beach Federal Sav. and Loan Ass'n v. Wood*, 901 F.2d 849, 851 (10th Cir.1990); *In re Schneider*, 864 F.2d 683, 865 (10th Cir.1988); *see* Bankruptcy Rules 7052 and 8013.

### Discussion

On appeal, the Heapes primarily raise one argument in an effort to demonstrate that the bankruptcy court erred. The Heapes contend that the bankruptcy court's statement that "First Federal's tenuous claim to the monies is premised on a claim for a fair rental value of the alleged post-petition occupancy of the homestead" is a finding unsupported by the stipulated facts, and thus is clearly erroneous. In the event that the court concludes that the bankruptcy court did have jurisdiction, the Heapes urge the court to review the stipulations of fact and decide this case without remanding the case to bankruptcy court. The Heapes contend that any purported "agreement" between themselves and First Federal was in reality a reaffirmation. The Heapes argue that because the "reaffirmation agreement" did not comply with 11 U.S.C. § 524(c), the agreement is unenforceable.

First Federal responds that the bankruptcy court did not error in its conclusion that it did not have jurisdiction. First Federal contends that the bankruptcy court properly concluded that the issues in dispute concerned postpetition activities of the

debtors and did not affect any property of the bankruptcy estate. Therefore the bankruptcy court did not have jurisdiction and First Federal's actions did not violate 11 U.S.C. § 524(a)(2).[1] First Federal directs the court's attention to *In re Gardner*, 913 F.2d 1515 (10th Cir.1990). First Federal contends that *In re Gardner* is direct authority for the bankruptcy court's decision in this case.

While *In re Gardner* is factually distinguishable from the case at bar, the case is instructive. In *In re Gardner*, Mrs. Gardner commenced a divorce action in Kansas state court. The Internal Revenue Service subsequently filed a tax lien against Mr. Gardner. Two days later Mr. Gardner filed for bankruptcy under Chapter 7. The bankruptcy court subsequently lifted the stay to allow the divorce proceedings, including the distribution of property, to continue. Later, the divorce decree was entered, awarding Mrs. Gardner nearly all of the property. At that time, all but the exempt property was held by the trustee. *Id.* at 1517.

Mrs. Gardner brought an adversary action against the bankruptcy trustee to obtain the bankruptcy estate property awarded to her in the divorce action. The bankruptcy court concluded that the divorce decree divested Mr. Gardner's interest in the property. Because Mr. Gardner's interest in the property was severed by the final divorce decree, the bankruptcy court held that any interest the government claimed to the property as a result of the tax lien was extinguished. The I.R.S. appealed, contending that the bankruptcy court lacked jurisdiction to determine the priority of two competing third-party lienors over property that was exempt from the bankruptcy estate. The court of appeals concluded that the bankruptcy court lacked jurisdiction to determine whether Mrs. Gardner's interests were superior to those

of the government after concluding that Mr. Gardner had no interest in the property.

The court of appeals first reviewed the jurisdiction of the bankruptcy court:

Bankruptcy courts have only the jurisdiction and powers expressly or by necessary implication granted by Congress. *Johnson v. First Nat'l Bank of Montevideo*, 719 F.2d 270, 273 (8th Cir.1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). Bankruptcy courts have jurisdiction over core proceedings. *See* 28 U.S.C. § 157. Core proceedings are proceedings which have no existence outside of bankruptcy. *In re Alexander*, 49 B.R. 733, 736 (Bankr. D.N.D.1985). Actions which do not depend on the bankruptcy laws for their own existence and which could proceed in another court are not core proceedings. *In re Wood*, 825 F.2d 90, 96 (5th Cir. 1987).

. . . . .

Bankruptcy courts also have jurisdiction over related proceedings, under the authority of 28 U.S.C. § 1471(b), which confers jurisdiction on district courts for cases related to title 11 proceedings. *In re Fietz*, 852 F.2d 455, 456 (9th Cir.1988); *see also* 28 U.S.C. § 157. Related proceedings are civil proceedings that, in the absence of a bankruptcy petition, could have been brought in a district court or state court. *In re Colorado Energy Supply, Inc.*, 728 F.2d 1283, 1286 (10th Cir.1984). "[T]he test for determining whether a civil proceeding is related in bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 944 (3d Cir.1984) (emphasis omitted). Although the proceeding need not be against the debtor or his property, the proceeding is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action in any way, thereby

---

**1.** 11 U.S.C. § 524 provides in pertinent part: (a) A discharge in a case under this title [11 U.S.C. §§ 101 et seq.]—

. . . . .

(2) operates as an injunction against the commencement or continuation of an action,

the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived ...

impacting on the handling and administration of the bankruptcy estate. *Id.; see also In re Wood,* 825 F.2d at 93 (related matters conceivably have effect on administration of bankruptcy estate); *In re Dogpatch U.S.A., Inc.,* 810 F.2d 782, 786 (8th Cir.1987) (same); *In re Bobroff,* 766 F.2d 797, 802 (3d Cir.1985) (same).

A bankruptcy court has jurisdiction over disputes regarding alleged property of the bankruptcy estate at the outset of the case. *In re Xonics, Inc.,* 813 F.2d 127, 131 (7th Cir.1987). When property leaves the bankruptcy estate, however, the bankruptcy court's jurisdiction typically lapses, *In re Hall's Motor Transit Co.,* 889 F.2d 520, 523 (3d Cir.1989); *In re Xonics, Inc.,* 813 F.2d at 131; *In re Muller,* 72 B.R. 280, 284 (C.D.Ill.1987), *aff'd* 851 F.2d 916 (7th Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1645, 104 L.Ed.2d 160 (1989), and the property's relationship to the bankruptcy proceeding comes to an end. *See In re Hall's Motor Transit Co.,* 889 F.2d at 523. Thus, the bankruptcy court lacks related jurisdiction to resolve controversies between third party creditors which do not involve the debtor or his property unless the court cannot complete administrative duties resolving the controversy.
*In re Shirley Duke Assocs.,* 611 F.2d 15, 18 (2d Cir.1979).

*Id.* at 1517–18.

The court of appeals concluded:

Since the dispute is not otherwise related and would not affect the distribution of assets and administration of the bankruptcy estate, we hold the bankruptcy court lacked jurisdiction to resolve the dispute between Mrs. Gardner and the

government regarding a lien on nonestate property. *See In re Holland Indus., Inc.,* 103 B.R. [461] at 469 [ (Bankr.S.D.N.Y.1989) ]; *In re Dickenson Lines, Inc.,* 47 B.R. 653, 656 (Bankr. D.Minn.1985). To hold otherwise would lead to almost unlimited jurisdiction by the bankruptcy court. *In re Dickenson Lines, Inc.,* 47 B.R. at 656. Either the federal district court or the state courts are the proper forum for resolving this dispute regarding property not belonging to Mr. Gardner.

*Id.* at 1519.

The case at bar is distinguishable from *In re Gardner* in that the dispute arises not between two competing third party lienholders, but rather between the debtor and a creditor. The creditor in the case at bar has engaged in both prepetition and postpetition business relations with the debtor. Nevertheless, the court agrees that the bankruptcy court was without jurisdiction to consider the Heapes' claim.

■ The dispute in this case arises out of a postpetition agreement between the Heapes and First Federal. That agreement concerns money that was never a part of the bankruptcy estate and is related to the debtors' attempt to retain possession of property exempted from the bankruptcy estate. First Federal is not seeking to set off that money against a debt discharged in bankruptcy, nor has First Federal asked for the debtors to enter a reaffirmation agreement. Instead, the debt arises out of a postpetition agreement which does not affect the administration of the bankruptcy estate. No portion of the agreement appears to be based upon a dischargeable debt.[2] Therefore, First Federal's actions were not a violation of 11 U.S.C. § 524.

2.  The Heapes direct the court's attention to *In re Gordon,* 57 B.R. 609. At that citation the case *In re Gardner,* 57 B.R. 609 (Bankr.D.Me.1986), appears. It appears from the Heape's brief that *In re Gardner* is the case which the Heapes intended to identify.

In *In re Gardner,* the court stated:
[T]he agreement may have been voluntary and some new consideration may have been received. But, being correct avails them of nothing. Section 524(c) of the Code provides

that any agreement between the plaintiff Terry and the debtor "the consideration for which, in whole *or in part* is based upon a debt that is dischargeable...." must comply with section 524(c). Even though the debtor may have received some post filing consideration, at least part of the consideration for the agreement is based upon the dischargeable debt. (emphasis in original)
*In re Gardner,* 57 B.R. at 610–11. *In re Gardner,* 57 B.R. 609, is distinguishable as the debtor in

The Heapes complain that the bankruptcy court erred in its finding that First Federal's claim to the money in the account arises under a theory that the money represented rent. The Heapes correctly note that none of the stipulated facts contain any reference to occupancy of the homestead or obligation to pay rent. The Heapes also note that the "ISSUES" section of the final pretrial order does not contain a claim for rent.

The bankruptcy court's findings are apparently based on an inference from First Federal's brief. In addition, while the "ISSUES" section of the final pretrial order does not specifically list any claim for rent, the section titled "DEFENDANT'S CONTENTIONS" contains the following sentence: "The Defendant is entitled to the fair rental value of the property as a result of Plaintiff's misrepresentations." In the section titled "RELIEF SOUGHT" First Federal claims the funds in the alternative "for the fair rental value of the property in which the debtors lived for a period of 18 months ..." In the section titled "THEORY (THEORIES) OF RECOVERY," First Federal claims to be entitled to "a fair rental value for the property as a result of the Plaintiffs' misrepresentations."

 The bankruptcy court's discussion of this issue does not seem to be an unreasonable inference from the stipulations and arguments of the parties. In any event, the bankruptcy court's ultimate determination that First Federal's claim to the funds involves postpetition assets and obligations is not in error. The mere fact that the parties in dispute engaged in prepetition business relations does not in and of itself confer jurisdiction on the bankruptcy court.[3] First Federal is apparently not attempting to set off the funds in the account against any prepetition debt (or perhaps more correctly, any deficiency judgment resulting from its foreclosure on the Heapes' property). In short, because the dispute does not involve prepetition assets, prepetition liabilities, discharged obligations or otherwise involve a matter "related" to the bankruptcy proceedings, the bankruptcy court is without jurisdiction to consider this dispute. The dispute over the funds in this case arise from postpetition transactions independent of the Heapes' bankruptcy.

IT IS THEREFORE ORDERED that the bankruptcy court's decision that it was without jurisdiction to consider the dispute over the $4,647.53 deposited in a savings account at First Federal is affirmed.

---

that case agreed to pay $4,500 to help settle a prepetition negligence/malpractice action filed against the debtor. *See In re Petersen*, 110 B.R. 946, 950 (Bankr.D.Colo.1990) (distinguishing *In re Gardner*). Essentially, the debtor in that case entered a postpetition agreement which settled a prepetition unsecured claim. In the case at bar, the purported agreement is apparently based solely on postpetition consideration.

3. The court is unaware of any rule prohibiting a debtor from entering a *new*, postpetition agreement with a prepetition creditor. *See In re*

*Petersen*, 110 B.R. at 950 ("Parties who have engaged in contractual relations prior to the filing of a bankruptcy petition may enter into a new agreement which is effective after the date of the petition without authorization from the Bankruptcy Court.") Obviously, such an agreement must not directly or indirectly resurrect personal liability discharged in bankruptcy. Any attempt to reaffirm debt must be done in conformity with 11 U.S.C. § 524(c). From the stipulated facts, however, the parties have not attempted to enter a reaffirmation agreement.