**NOT FOR PUBLICATION**

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.  CC-14-1351-DTaKu |
| ) | |
| WILLIAM MICHAEL WATSON, ) | Bk.  No.  2:12-bk-34557 |
| ) | |
| Debtor. ) | |
| _____ ) | |
| WILLIAM MICHAEL WATSON ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[1] |
| ) | |
| DAVID ALAN GILL, Chapter 7 ) | |
| Trustee, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on June 18, 2015
at Pasadena, California

Filed - June 25, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Thomas B. Donovan, Bankruptcy Judge, Presiding

Appearances:    Michael Gordon York argued for Appellant; Kevin D.
Meek of Danning, Gill, Diamond & Kollitz, LLP
argued for Appellee.

Before: DUNN, TAYLOR AND KURTZ, Bankruptcy Judges.

---

[1]This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8024-1.

Chapter 7[2] debtor William Michael Watson ("Debtor") appeals from the bankruptcy court's Order Allowing Administrative Claims, Professional Fees and Expenses, [and] Trustee's Fees and Expenses. We AFFIRM.

## I. FACTS

The Debtor filed his chapter 7 petition on July 17, 2012. Appellee David A. Gill ("Trustee") was appointed the chapter 7 trustee. On the Debtor's Schedule A, he listed a one-half interest in "21 undeveloped acres in Louisiana" (the "Properties") which the Debtor valued at $10,000.00. The Debtor claimed an exemption in the Properties in the amount of $10,000.00, pursuant to California Code of Civil Procedure § 703.140(b)(1).

The Properties, which comprised two parcels, were co-owned with the Debtor's brother, Gary Sherman. The Debtor told the Trustee that, pursuant to an oral agreement between Mr. Sherman and the Debtor, Mr. Sherman was to receive one parcel, and the Debtor was to retain the other. However, the title had not been changed to reflect such an agreement. When the Trustee expressed his belief that the Properties might be worth more than their scheduled value, the Debtor obtained an appraisal, which valued the Properties at $59,000.00. The Trustee concluded that the value of the Debtor's pre-petition interest in the Properties,

[2]Unless specified otherwise, all chapter, section and rule references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

2

net of his exemption, was $24,500.00.

The Trustee decided to pursue the estate's interest in the Properties. To facilitate this, the Trustee hired Danning, Gill, Diamond & Kollitz, LLP ("Danning Gill") as his general counsel. Danning Gill began its work for the Trustee on January 23, 2013, but did not file an employment application at that time.

At some point, the Debtor offered to buy the estate's interest in the Properties. Negotiations followed between the Debtor's counsel and Danning Gill. On June 27, 2013, approximately five months after Danning Gill's employment began, the Trustee filed a motion for authority to settle the matter. Under the settlement, the Debtor was to pay $16,550.00 to the Trustee in exchange for the estate's interest in the Properties. The bankruptcy court approved the settlement on July 24, 2013. Seven days later, the Debtor paid the Trustee as agreed. That $16,550.00 payment constituted the entirety of the estate's receipts.

In November 2013, Danning Gill discovered during the preparation of its final fee application that it never had requested bankruptcy court approval of its employment. To remedy this oversight, on November 27, 2013, the Trustee filed an application to employ Danning Gill nunc pro tunc as of January 23, 2013 ("Nunc Pro Tunc Application"). In an attached declaration, Danning Gill attorney Eric P. Israel attributed the failure to make a timely application to "inadvertence or oversight." Mr. Israel further explained that, due to the protracted nature of the settlement negotiations, he had not followed his usual procedure for filing employment applications.

3

The Debtor opposed the Nunc Pro Tunc Application. In his accompanying Memorandum of Points and Authorities, the Debtor did not challenge Danning Gill's disinterestedness or any other criterion for eligibility to serve as general counsel for the estate. Rather, the Debtor argued that inadvertence or oversight was insufficient to establish extraordinary circumstances justifying nunc pro tunc approval of employment.

The Trustee filed a reply memorandum, arguing that the application should be approved, because Danning Gill had offered a satisfactory explanation for its delay in submitting an application, and because Danning Gill's work had provided a significant benefit to the estate.

The bankruptcy court set the matter for hearing and entered a tentative ruling ("Tentative Ruling"). In the Tentative Ruling, the bankruptcy court proposed to grant the Nunc Pro Tunc Application over the Debtor's opposition and stated as follows:

> [The Nunc Pro Tunc Application] should be granted because:
>
> (1) The delay was adequately explained,
>
> (2) The delay was inadvertent,
>
> (3) The delay amounts to harmless error,
>
> (4) The services performed resulted in a significant benefit to the estate,
>
> (5) Indeed, the services resulted in the only recovery to the estate,
>
> (6) The fees requested are very reasonable in relation to the $16,550.00 cash recovery to the estate,
>
> (7) All requirements of 11 U.S.C. § 327 are met by attorneys, and
>
> (8) But for these services performed at risk to the attorneys, the estate would have recovered nothing.

4

In its Tentative Ruling, the bankruptcy court waived appearances at the January 9 hearing.

On January 23, 2014, the bankruptcy court entered an order approving the Nunc Pro Tunc Application ("Nunc Pro Tunc Order"). The bankruptcy court noted in the Nunc Pro Tunc Order that it appeared:

> that it is necessary that the Trustee employ Danning, Gill, Diamond & Kollitz, LLP, and [that] its partners and employees do not hold or represent any interest adverse to the Debtor, the creditors, or the estate, and are disinterested persons as that term is defined in 11 U.S.C. § 101(14) and used in 11 U.S.C. § 327(a), and that Danning, Gill, Diamond & Kollitz, LLP's employment nunc pro tunc is justified in this case[.]

On March 5, 2014, Danning Gill submitted its first and final fee application ("Fee Application"). Attached to the Fee Application, Danning Gill provided a narrative of its services, along with detailed billing records beginning on January 23, 2013. Danning Gill requested total fees of $9,157.00 and expense reimbursement in the amount of $1,053.47.[3]

The Trustee submitted his final report and applications for compensation ("Final Report") on May 15, 2014. The Final Report revealed that the balance of funds on hand in the estate amounted to $15,616.27, all of which were derived from the settlement between the Debtor and the Trustee.[4] The Final Report proposed

_____

[3]Danning Gill did not charge any fees for the time it spent responding to the Debtor's opposition to the Nunc Pro Tunc Application.

[4]This figure represents the balance after payment of bank service fees and fees of Swicker & Associates Accountancy Corp., whose compensation had been approved in a prior order.

payment to the Trustee in the total amount of $2,683.55 for fees and expenses, and to Danning Gill in the amount requested in the Fee Application. The remaining $2,722.25 was to be paid to priority creditors with claims totaling $28,169.41.

The Debtor filed an opposition to the Final Report on June 17, 2014. In an accompanying memorandum, the Debtor made two arguments. First, the Debtor argued in general terms that the fees were unreasonably high in proportion to the estate's assets, but the Debtor did not specify any particular charges that he deemed unreasonable. However, the Debtor's main reason for opposing the Final Report was his continuing displeasure with the bankruptcy court's Nunc Pro Tunc Order. The Debtor argued that Danning Gill's compensation should be limited to the fees it charged for work done after the entry of the Nunc Pro Tunc Order.

In response to the Debtor's opposition, the Trustee noted that the bankruptcy court had already overruled the Debtor's objection to the Nunc Pro Tunc Application.

The bankruptcy court scheduled a hearing on the Final Report for July 2, 2014, and again waived appearances. On July 3, 2014, the bankruptcy court entered an order allowing the requested fees ("Compensation Order"). In its Compensation Order, the bankruptcy court made the following statement regarding the Debtor's opposition to the Final Report:

> Debtor's opposition, filed June 17, 2014, to the Trustee's Final Report and Applications for Compensation is overruled, for all the reasons set forth in the Trustee's application and in the Trustee's reply, filed June 24, 2014, to the Debtor's opposition. The court issued a tentative ruling to grant the Trustee's application and excused appearances at the hearing scheduled on July 2, 2014 at 11:00 a.m. Nobody appeared at the hearing.

6

The Debtor filed a timely Notice of Appeal from the Compensation Order on July 14, 2014. The Trustee filed a motion with the BAP to dismiss the Debtor's appeal for lack of standing. The Debtor argued in response that his nondischargeable priority tax debts constituted a sufficient pecuniary interest to establish standing. Specifically, the Debtor argued that reversal of the Compensation Order and reduction of Danning Gill's approved fees would increase payments to priority creditors and lessen his post-bankruptcy obligations. Our motions panel agreed with the Debtor and denied the motion to dismiss.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Whether the Debtor has standing to appeal.

2. Whether the bankruptcy court abused its discretion in granting the Nunc Pro Tunc Order and the Compensation Order.

## IV. STANDARD OF REVIEW

We review the bankruptcy court's award of attorney fees for an abuse of discretion. Smith v. Edwards & Hale (In re Smith), 317 F.3d 918, 923 (9th Cir. 2002). A bankruptcy court's order approving the employment of professionals nunc pro tunc is likewise reviewed for abuse of discretion. Atkins v. Wain (In re Atkins), 69 F.3d 970, 973 (9th Cir. 1995).

A bankruptcy court abuses its discretion if it applies an incorrect legal standard or misapplies the correct legal

7

standard, or if its factual findings are illogical, implausible or unsupported by evidence in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011). Only if the bankruptcy court did not apply the correct legal standard or improperly applied it, or if its fact findings were illogical, implausible, or without support in inferences that can be drawn from facts in the record, is it proper to conclude that the bankruptcy court abused its discretion. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

We may affirm the decision of the bankruptcy court on any basis supported by the record. See ASARCO, LLC v. Union Pac. R. Co., 765 F.3d 999, 1004 (9th Cir. 2014); Shanks v. Dressel, 540 F.3d 1082, 1086 (9th Cir. 2008).

## V. DISCUSSION

### A. Standing

As a threshold matter, the Trustee renews his argument that the Debtor lacks standing to bring this appeal. Standing is "a jurisdictional requirement which remains open to review at all stages of the litigation." Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 255 (1994). Therefore, we consider the Trustee's standing argument here.

Standing in bankruptcy appeals exists only for those parties who are "directly and adversely affected pecuniarily" by the bankruptcy court's order. Fondiller v. Robertson (In re Fondiller), 707 F.2d 441, 442 (9th Cir. 1983); Paine v. Dickey (In re Paine), 250 B.R. 99, 104 (9th Cir. BAP 2000). A debtor has standing if the order would "diminish the debtor's property, increase his burdens, or detrimentally affect his

8

rights." Paine, 250 B.R. at 99, citing Fondiller, 707 F.2d at 442.

The Trustee argues that the Debtor's only interest in the appeal is "speculative" and "tangential." Appellee Brief at 19. The Trustee asserts that reversal by this Panel cannot provide any possible financial benefit to the Debtor.

We agree with the motions panel's decision to deny the motion to dismiss for the reason that the existence of nondischargeable claims can suffice to confer standing on a debtor to appeal from orders affecting the size of the estate. Cukierman v. Uecker (In re Cukierman), 242 B.R. 486, 488 n.2 (9th Cir. BAP 1999), aff'd in part, rev'd in part, on other grounds, 265 F.3d 846 (9th Cir. 2001). As the Trustee points out, the primary issue in Cukierman was a landlord's entitlement to an administrative claim against the estate. In that case, as in this one, the debtor's interest in the controversy was the amount of money that would remain in the estate to pay his priority creditors. Id. at 488. The Panel held that this was a sufficient pecuniary interest to confer standing to appeal. It suffices here as well.

B.    The Orders on Appeal

Section 330 provides for compensation of attorneys out of funds of the bankruptcy estate. Bankruptcy courts may award "reasonable compensation for actual, necessary services" rendered by the attorney and "reimbursement for actual, necessary expenses." In his opposition to the Final Report, the Debtor argued that Danning Gill's fees were unreasonably high in light of the amount of benefit to the estate and in proportion to the

9

estate's total assets. However, the Debtor makes no such argument on appeal, and we do not consider the issue, as it is waived. See Greenwood v. F.A.A., 28 F.3d 971, 977 (9th Cir. 1994); Miller v. Fairchild Indus., Inc., 797 F.2d 727, 738 (9th Cir. 1986). Instead, the Debtor argues that the bankruptcy court never should have granted the Nunc Pro Tunc Application and that Danning Gill therefore was not entitled to any compensation for the services it provided before its employment was approved.

"Failure to receive court approval for the employment of a professional in accordance with § 327 and Rule 2014 precludes the payment of fees." Shirley v. DeRonde (In re Shirley), 134 B.R. 940, 943 (9th Cir. BAP 1992). Therefore, if the bankruptcy court abused its discretion in granting the Nunc Pro Tunc Order authorizing Danning Gill's employment as of January 23, 2013, it follows that Danning Gill was not entitled to payment for legal services prior to entry of the Nunc Pro Tunc Order.

Nunc pro tunc employment is available in "exceptional circumstances." Atkins, 69 F.3d at 974. To establish such circumstances, the applicant must (1) give a satisfactory explanation for the failure to obtain pre-employment approval; and (2) show that its services conferred a significant benefit on the bankruptcy estate. Id.; Law Offices of Ivan W. Halperin v. Occidental Fin. Group, Inc. (In re Occidental Fin. Group, Inc.), 40 F.3d 1059, 1062 (9th Cir. 1994); Okamoto v. THC Fin. Corp. (In re THC Fin. Corp.), 837 F.2d 389, 392 (9th Cir. 1988). The bankruptcy court considering such an application may also, in its discretion, rely on other factors, such as those set forth in In re Twinton Props. P'ship, 27 B.R. 817, 819-20 (Bankr. M.D.

10

Tenn. 1983) (see infra at pp. 15-16). Atkins, 69 F.3d at 976. Of course, the applicant also must meet the criteria for employment under § 327. Id.; Mehdipour v. Marcus & Millichap (In re Mehdipour), 202 B.R. 474, 479 (9th Cir. BAP 1996).

1.    Satisfactory Explanation

In its Tentative Ruling on the Nunc Pro Tunc Application, the bankruptcy court announced its tentative conclusion that the "delay [in applying for employment] was adequately explained." The Debtor takes issue with this conclusion, arguing that Danning Gill's delay was the result of mere negligence, which the Debtor asserts cannot be a satisfactory explanation. Although statements in certain decisions of the Panel appear at first glance to support this contention, a closer examination of these decisions reveals flaws in the argument.

a.    In re Downtown Inv. Club III

In Andrew v. Coopersmith (In re Downtown Inv. Club III), 89 B.R. 59 (9th Cir. BAP 1988), in reversing the bankruptcy court, the panel commented that "a nunc pro tunc order is improperly sought" when the delay is due to "mere negligence or inadvertence," and that retroactive employment is inappropriate "where the lateness in seeking court approval . . . is accompanied by inexcusable or unexplained negligence." Id. at 63. The panel went on to emphasize that the applicant firm in that case had not applied for employment under § 327 at all. Id. In other words, the firm's "lateness" was a total failure to seek authorization of its employment prior to requesting fees. In addition, a conflict of interest precluded approval of its application in any event, even if the firm had filed one

11

properly.  Id. at 64.  On the nature of the conflict, the panel noted, "[a] clearer conflict, representation of both the lender and the borrower, can hardly be imagined."  Id.

The panel in Downtown Investment did not cite the Ninth Circuit's then-recent decision in THC Fin. Corp., which established the two-part test for exceptional circumstances.  The panel did not specifically address whether the firm's explanation for its delay was satisfactory.  It did, however, indirectly address the second THC Fin. Corp. standard, whether the firm's services benefitted the estate.  The bankruptcy court had required the party opposing the application to show that the firm's services had not provided a benefit, which the panel noted was an erroneous allocation of the burden of proof.  Downtown Investment, 89 B.R. at 64.  In short, the panel predicated its finding of an abuse of discretion on far more than the "mere negligence or inadvertence" of the applicant firm in failing to seek timely approval of its employment.[5]

b.    In re Shirley

The Shirley panel stated in a footnote: "Mere negligence does not constitute an exceptional circumstance justifying the entry of a retroactive order [of employment]."  Shirley, 134 B.R. at 943 n.4, citing Credit Alliance Corp. v. Boies (In re Crook), 79 B.R. 475 (9th Cir. BAP 1987).  The cited decision, Crook, was decided before THC Fin. Corp. and Atkins, and did not apply the

---

[5]The panel also discussed other problems with the bankruptcy court's orders, including lack of notice of the underlying motions.  See also In re Gutterman, 239 B.R. 828 (N.D. Cal. 1999) (describing the facts of Downtown Investment as "egregious").

12

two-part exceptional circumstances test. Thus, it is of limited application in analyzing the "satisfactory explanation" element of that test.

As in Downtown Investment, the Shirley panel does not appear to have based its decision to any significant extent on the "mere negligence" issue. Shirley was an appeal in a chapter 11 case in which the attorney for the debtor in possession made no application for employment under § 327. Shirley, 134 B.R. at 940. Instead, he filed a "Substitution of Attorney" in the bankruptcy court, signed by the attorney and the debtor, for which he neither sought nor received court approval.[6] Id. The primary issue in Shirley was not whether the bankruptcy court permissibly could have approved the attorney's employment nunc pro tunc, which it did not do in any event. Rather, the appeal concerned the question whether relief from stay was available to the attorney to pursue his fees in state court. This appears to have been the panel's reason for confining the "mere negligence" discussion, arguably as dicta, in a three-sentence footnote.

c. The current appeal

In his declaration filed in support of the Nunc Pro Tunc Application, Danning Gill attorney Eric Israel explained that the firm failed to make a timely application due to "inadvertence or oversight." Mr. Israel went on to state that the peculiarities of the case, and in particular the negotiations over a period of

---

[6]The Panel noted that the attorney had prepared an ex parte application for nunc pro tunc employment, but that application had not been signed by the debtor or approved by the bankruptcy court.

13

months between Danning Gill and the Debtor's attorney, had prevented him from following Danning Gill's usual procedures to ensure timely filing. Finally, Mr. Israel declared that the firm's mistake was "an isolated incident." This statement stands unchallenged in the record on which the bankruptcy court based its decision.

The bankruptcy court, in its Tentative Ruling, deemed Danning Gill's delay in applying for approval of its employment "inadvertent" and "harmless." These characterizations find support in the record, as does the bankruptcy court's statement that "the delay was adequately explained." The above-discussed cases, which involved much more serious lapses on the part of the applicants, do not preclude such a conclusion.

This is not to say that the bankruptcy court was required to find this explanation satisfactory. If, in the exercise of its discretion, the bankruptcy court had arrived at an opposite conclusion, we would be disinclined to reverse. However, the bankruptcy court, by virtue of its proximity to the circumstances of the litigation and its acquaintance with the quality of Danning Gill's practice in general, was in the best position to evaluate Danning Gill's explanation. See Pincay v. Andrews, 389 F.3d 858, 859 (9th Cir. 2004) (en banc) (trial court is in best position to evaluate law firm's explanation of its mistake). In these circumstances, the bankruptcy court did not abuse its discretion when it determined that Danning Gill satisfactorily explained its failure to make a timely application.

2. Significant benefit to the estate

There appears to be no dispute that Danning Gill's services

14

to the Trustee resulted in a significant benefit to the bankruptcy estate. Indeed, the settlement Danning Gill negotiated with the Debtor was the sole source of funds for the estate. As the bankruptcy court noted in its Tentative Ruling, "the services [provided by Danning Gill] resulted in the only recovery to the estate[.]"

### 3. Other factors

The Ninth Circuit has held that a bankruptcy court, in the exercise of its discretion in deciding whether to grant a nunc pro tunc employment application, may, but need not, consider additional factors, including those enumerated in Twinton Properties. Atkins, 69 F.3d at 976. The Twinton Properties factors are:

> 1. The debtor, trustee or committee [to whom or to which the services were rendered] expressly contracted with the professional person to perform the services which were thereafter rendered;
>
> 2. The party for whom the work was performed approves the entry of the nunc pro tunc order;
>
> 3. The applicant has provided notice of the application to creditors and parties in interest and has provided an opportunity for filing objections;
>
> 4. No creditor or party in interest offers reasonable objection to the entry of the nunc pro tunc order;
>
> 5. The professional satisfied all the criteria for employment pursuant to 11 U.S.C. § 327 and [Rule 2014] of the Federal Rules of Bankruptcy Procedure at or before the time services were actually commenced and remained qualified during the period for which services were provided;
>
> 6. The work was performed properly, efficiently, and to a high standard of quality;
>
> 7. No actual or potential prejudice will inure to the estate or other parties in interest;
>
> 8. The applicant's failure to seek pre-employment

15

approval is satisfactorily explained; and

9.   The applicant exhibits no pattern of inattention or negligence in soliciting judicial approval for the employment of professionals.

Twinton Properties, 69 B.R. at 819-20, quoted in Atkins, 69 F.3d at 974.[7]

Although the bankruptcy court's Tentative Ruling did not make explicit reference to Twinton Properties, a number of the court's observations correspond to Twinton Properties factors.

The bankruptcy court's remark that "the delay amounts to harmless error" is consistent with the seventh Twinton Properties factor, regarding lack of prejudice to the estate or other parties in interest.  The Debtor does not argue that he suffered any prejudice from Danning Gill's delay in submitting its application.  Although the estate would be left with more money in the absence of Danning Gill's fees, it does not follow that the **delay** in the application prejudiced the estate or the Debtor. If Danning Gill had applied timely, the situation would have been no different for the Debtor or for the estate.  Indeed, Danning Gill did not charge any fees for its work in responding to the Debtor's opposition to the Nunc Pro Tunc Application.  Thus, even though the episode resulted in more work for Danning Gill, it did not diminish the estate's assets.

The bankruptcy court also found that Danning Gill's fees

_____

[7]The Twinton Properties court presented these nine items as required criteria that must be satisfied before nunc pro tunc approval can be granted.  However, under Atkins, they are simply factors that the bankruptcy court may consider in its discretion, although some of the factors overlap with the required elements of the two-part THC Financial Corp. test.

16

were "very reasonable in relation to the $16,550.00 cash recovery to the estate[.]" This corresponds to the sixth Twinton Properties factor, which concerns the quality and efficiency of the professional's work. Similarly, the observation that "but for [the] services performed at risk to the attorneys, the estate would have recovered nothing" speaks to the quality and efficiency of Danning Gill's performance.

The ninth Twinton Properties factor, lack of a pattern of inattention or negligence on the part of the professional, was not discussed in the bankruptcy court's Tentative Ruling, but it was mentioned in Mr. Israel's declaration. Mr. Israel referred to his firm's mistake as "an isolated incident." The need to deter attorneys from neglecting the requirements of § 327 is less pressing when there is no reason to fear that the firm will repeat its mistake in the future. See In re Gutterman, 239 B.R. at 831.

The bankruptcy court was not required to consider any of these factors in reaching its decision. However, it properly exercised its discretion by doing so.

4. Requirements of § 327

"Applying for nunc pro tunc approval does not alleviate the professional from meeting the requirements of § 327; the professional still must show that it was disinterested." Mehdipour, 202 B.R. at 479. After stating in its Tentative Ruling that Danning Gill met all requirements of § 327, the bankruptcy court found in its Nunc Pro Tunc Order that Danning Gill and its partners and employees did "not hold or represent any interest adverse to the Debtor, the creditors, or the estate,

17

and [were] disinterested persons as that term is defined in 11 U.S.C. § 101(14) and used in 11 U.S.C. § 327(a)[.]"  The Debtor does not dispute this conclusion, and the record supports it.

## VI. CONCLUSION

Based on the foregoing, we conclude that the Nunc Pro Tunc Order was not an abuse of the bankruptcy court's discretion. Consequently, we conclude that the Compensation Order also was not an abuse of discretion.  We AFFIRM.

18